# CHARLESTON.

### PEABODY INS. CO. *v.* WILSON & BEASLEY *et al.*

Submitted January 24, 1887.—Decided April 9, 1887.

The holders sued the makers and endorser of a negotiable note, payable at the Exchange Bank of Wheeling, Wheeling, W. Va. The making and endorsement of the note were admitted by the pleadings. The only questions at the trial were, whether the note had been duly presented for payment, and due notice of its dishonor given to the endorser. The only evidence on these two points, was the notarial certificate of protest, made on the day the note fell due, by a notary public of Ohio county, W. Va., residing in the city of Wheeling in that county, which simply stated, "that on that day he presented said note for payment to the *cashier* of said bank, and demanded payment, and was answered, 'no funds,' whereupon he protested the note for non-payment;—and therein stated.—' Of which protest, I duly notified the endorsers and drawer, by delivering and mailing notices of the protest to *their several addresses.*' " No other evidence having been introduced on the trial, the endorser demurred to the evidence, in which demurrer the plaintiff joined. The demurrer was argued, and the court took time to consider of its judgment. At the next term, and before judgment, the plaintiff filed the affidavit of a witness, showing it had inadvertently joined in the demurrer, and that the endorser had always acknowledged his liability for said debt, and promised to pay the same; that it could and would supply all the evidence necessary to charge the endorser, and moved the court to be allowed to withdraw its joinder in the demurrer and to grant it a new trial, which motion the court overruled, and entered judgment against the makers and endorser in favor of the plaintiff for the amount of the note. HELD that—

I. PROMISSORY NOTES—PLACE OF PAYMENT—PRESENTMENT—ENDORSER.

Where a negotiable note is by its terms payable at a particular bank, proof of presentment at that bank for payment, at its maturity, is indispensable to a recovery in an action thereon against an endorser. (p. 544.)

II. PROMISSORY NOTES—PLACE OF PAYMENT—PRESENTMENT—ENDORSER.

In such an action it will not be sufficient to show, that such note

was presented for payment to the cashier of the bank at which it is payable, unless it further appears, that such presentment was so made to the *cashier at the bank*. (p. 544.)

III. PROMISSORY NOTES—PROTEST—CONSTRUCTION OF STATUTE—EVIDENCE.

The true construction of sec. 7 of chapter 51 and of sec. 8 of chapter 99 of the Code of West Va. is, that the protest of a negotiable note and other instruments mentioned therein shall be *prima facie evidence of the facts* "stated therein, or at the foot, or on the back thereof, in relation to presentment, dishonor and notice thereof." (p. 548.)

IV. PROMISSORY NOTES—PROTEST—EVIDENCE.

The notarial certificate of protest is in the nature of *documentary* evidence, and the proper construction, as well as the legal effect thereof, as an instrument of evidence of the facts stated therein, *are questions, of law* to be determined exclusively by the court. (p. 536.)

V. PROMISSORY NOTE—DUE DILIGENCE.

When the facts are undisputed, what constitutes *due diligence*, is a question of law, to be determined exclusively by the court. (p. 550.)

VI. PROMISSORY NOTE—PRESENTMENT—NOTICE—ENDORSER.

What constitutes "due presentment or notice," sufficient to charge an endorser are not properly speaking *facts* but *conclusions of law*, to be drawn by the court, from undisputed or admitted facts. (p. 548.)

VII. EVIDENCE—DEMURRER TO EVIDENCE.

Either party may demur to the evidence of the other, unless the case be clearly against the party offering the demurrer, or unless the court should doubt what facts should fairly be inferred from the evidence demurred to. (p. 536.)

VIII. EVIDENCE.

When *matter of record, or other matter in writing* is offered in evidence in maintenance of an issue joined between the parties, the opposite party may always demur to the evidence, and compel the party offering the evidence to join in the demurrer. (p. 534.)

IX. EVIDENCE—DEMURRER TO EVIDENCE.

Whenever a party may properly insist upon his demurrer to evidence, the other party *must* join in the demurrer. (p. 535.)

X. EVIDENCE—DEMURRER TO EVIDENCE.

The whole proceeding upon a demurrer to evidence is under the control of the judge before whom the trial is had; and if, owing to a mistake or other causes, a material fact be omitted without which the merits of the case can not be decided, the de-

67

murrer should be set aside and a new trial awarded; and this may be done on motion of either of the parties, or by the court itself, before final judgment. (p. 537.)

XI. EVIDENCE—DEMURRER TO EVIDENCE—NEW TRIAL.

When it has been shown by proper evidence, or when it appears by the record, that a demurrer to evidence should be set aside, and a motion for that purpose has been made and improperly overruled; and the court afterwards renders judgment on such demurrer in favor of the party making such motion, such error in overruling such motion is prejudicial to both parties, and the party against whom such judgment on the demurrer was rendered may, upon writ of error, have the same reversed and the demurrer set aside and a new trial awarded. (p. 541.)

XII. EVIDENCE—DEMURRER TO EVIDENCE—NEW TRIAL.

If a demurrer to evidence be so negligently framed, that it does not contain the necessary facts, on which a judgment on the merits of the case can be safely founded, and the court from the facts appearing in the record judicially knows, that other evidence exists within the reach of the parties, by which the omitted facts may be supplied, the demurrer should be set aside and a new trial awarded. (p. 542.)

XIII. PROMISSORY NOTE—ENDORSER—PROTEST.

Where the endorser resides in the same city or town where the demand of payment is made, the notice to the endorser must be personal or left at his dwelling-house or place of business. If he resides at a different place, the notice must be sent to him by the first mail which leaves after the day of dishonor is past, and does not close before early and convenient hours, of the day succeeding the day of dishonor,—directed to him at the place of his residence, or to his nearest post-office, or to the post-office, where he usually receives mail matter, advising him of the protest. (p. 546.)

XIV. EVIDENCE—DEMURRER TO EVIDENCE.

Where the only evidence introduced to prove presentment, dishonor and notice is contained in the notarial certificate of protest, the court upon a demurrer to the evidence will not infer, that any step was regularly taken, or that any fact existed, which is not certified to in such protest. (p. 551.)

XV. PROMISSORY NOTE—PROTEST—ENDORSER.

When such protest simply states, that notice was addressed to the endorsers at a certain place, without adding, that such place was the post-office or residence of the endorser, upon a demurrer to evidence, the court will not *infer*, that such *was the fact*; and such certificate is therefore insufficient to prove due notice. (p. 551.)

XVI. PROMISSORY NOTE—PROTEST—ENDORSER—NOTICE.

Where such protest simply states, that notice thereof was sent by mail to the endorsers directed to their "several addresses," such certificate, in the absence of all other evidence, is insufficient to prove "due notice." (p. 567.)

XVII. PROMISSORY NOTE—PRESENTMENT—ONUS PROBANDI—EN- DORSER.

The *burden of proof*, that due presentment of the note for pay- ment has been made and due protest thereof given to the endorser, or that due diligence has been used to give such notice, rests upon the *plaintiff ;* and clear proof on the part of the plaintiff of such presentment, dishonor and notice is a condition precedent to his right to recover against the endorser. (p. 568.)

Statement of the case by WOODS, JUDGE :

This was an action of debt brought in the Circuit Court of Cabell county by The Peabody Insurance Company against Wilson & Beardsley, makers, and E. S. Buffington indorser of a promissory note in the words and figures following :

"$4,000.00.          HUNTINGTON, W. VA., August 23, 1884.

" Six months after date we promise to pay to the order of E. S. Buffington four thousand dollars, negotiable and paya- ble without offset, at the Exchange Bank of Wheeling, Wheeling, West Virginia. Value received.

                              "WILSON & BEARDSLEY."

"Endorsed.—" E. S. BUFFINGTON."
          " PEABODY INS. CO. "

The plea was *nil debet*, on which the plaintiff took issue, which on the 27th of November, 1885, was tried by a jury.

The defendants offered no evidence. After the plaintiff's evidence had all been introduced, the defendant, Buffing- ton, demurred thereto, in which demurrer the plaintiff joined.

The jury found a verdict in favor of the plaintiff for $4,081.00, subject to the opinion of the court on the de- murrer to evidence, and by consent were discharged.

The only evidence introduced on the trial was the origi- nal note with the indorsements thereon, the making and in- dorsement of which were admitted by the pleadings, and the notarial certificate of protest thereof with the indorse- ments thereon made by the notary.

The notarial certificate of protest and endorsements thereon are as follows :

" UNITED STATES OF AMERICA,

"WHEELING, OHIO COUNTY, WEST VA.:

" Be it known, That on the date hereof I, Jno. R. Miller, notary public for the county of Ohio, in the State of West Virginia, residing in the city of Wheeling, by lawful authority, duly commissioned and qualified, at the request of the Commercial Bank, the holder of the original note, a copy of which is on the other side written, did present the said original note to the cashier of the Exchange Bank of Wheeling and demanded payment thereof, the time limited for payment having expired, to which demand I was answered, " no funds," and the note was not paid.

" Whereupon, I, the said notary, at the request aforesaid, have protested, and by these presents do solemnly protest, against the drawer of the said original note, and all others whom it doth or may concern, for all costs, exchange, re-exchange, charges, damages and interest suffered and to be suffered for want of payment thereof, of which protest I duly notified the endorser and drawer by delivering and mailing notices of this protest to their several addresses.

" Thus done and protested, at Wheeling aforesaid, SEAL. this 26th day of February, 1885. In testimony whereof I have hereunto set my hand and affixed my seal notarial, the day and year aforesaid.

" JNO. R. MILLER, Notary Public.

" Protesting, $1.00; notices, .30; postage, .04; total, $1.34. Endorsed on back :—

" $4,000.00.          HUNTINGTON, W. VA., Aug. 23d, 1884.

" Six months after date we promise to pay to the order of E. S. Buffington four thousand dollars, negotiable and payable without offset at the Exchange Bank of Wheeling, Wheeling, West Virginia. Value received.

"WILSON & BEARDSLEY."

Endorsed :—" E. S. BUFFINGTON,"
          " PEABODY INS. CO. "

The court took time until the regular term in December term following to consider of its judgment, at which term

on the 15th of December, 1885, the plaintiff filed the affidavit of its counsel, J. M. Layne, alleging in substance that the plaintiff was utterly taken by surprise on the trial by the demurrer of the defendant, Buffington, to the plaintiff's evidence; that it was the plaintiff's understanding, that there would be no defence to its action; that said Buffington had always acknowledged his liability for the debt sued for, and had promised to pay the same as soon as he could get the money from W. T. Thompson, who was the assignee of the defendants, Wilson and Beardsley, and that if any deficiency exists in the certificate of protest of the note sued on, it was omitted inadvertently, and can be fully supplied," and thereupon moved the court to allow it to withdraw its joinder in the demurrer to the evidence and grant it a new trial.

This motion the court overruled and the plaintiff excepted and filed its bill of exceptions.

On a subsequent day of the same term the court entered judgment in favor of the plaintiff against the defendants for the amount found by the verdict, with interest and costs, "including $15.00 as allowed by the statute."

To this judgment the defendant, Buffington, has obtained a writ of error.

*T. H. Harvey* for plaintiffs in error.

*J. M. Layne* and *J. F. Brown* for defendant in error.

Woods, Judge :

The plaintiff in error insists, that the Circuit Court erred in rendering judgment against him on the demurrer, because—
1st—The evidence was wholly insufficient to maintain the issue on the part of the plaintiff against him ; 2d, it included in the taxation of the costs a statutory fee of $15.00 ; and 3d, because of other errors apparent upon the face of the record.

We are clearly of opinion that the court erred in including in its judgment for costs a statutory fee of $15.00 as there is no statute authorizing a fee to be taxed in actions at law.

Section 13 of chapter 138 of the Code as amended by chapter 72 of the Acts of 1877, regulating the taxable attorney's fees, declares, " that the clerk of a court wherein a party recovers costs shall tax the same, and he shall include in the

costs to the prevailing party in an action at law not less than two and a half, nor more than ten dollars. "

The Circuit Court had no authority to include in its judgment for costs any larger sum, but this Court will not for that cause reverse a judgment otherwise correct, but if possible from the face of the record to do so, it will correct the error, and affirm the judgment. The refusal of the Circuit Court to permit the plaintiff to withdraw its joinder in the demurrer and grant a new trial presents a more serious question. ·

Under what circumstances a party may demur to evidence offered by his adversary, and compel him to join in such demurrer, was laid down with great perspicuity by Lord Chief Justice Eyre delivering the opinion of the judges in · · the House of Lords in the case of *Gibson & Johnson* v. *Hinton*, 2 H. Blk. R. 208. While the tendency in this country in later cases has been to enlarge the rule to include cases which under the rule laid down by him, would have been excluded, the principle of the rule so established has never been departed from.

This rule was " that if a *matter of record* or other matter in *writing* be offered in evidence in maintenance of an is- · sue joined, the parties may insist upon the jury being discharged from giving a verdict by demurring to the evidence and obliging the party offering the evidence to join in the demurrer ; and he can not refuse to join in the demurrer ; he *must* join or waive his evidence. Why is he *obliged* to join in demurrer when the evidence which he offered is in writing? The reason is, because there can not be any variance of a matter in writing.

" Parol evidence is sometimes certain, and no more admitting of any variance than a matter in writing. The reason for obliging the party offering evidence in writing to join in demurrer, applies to *this sort* of parol evidence, but it does not apply to parol evidence, which is loose and indeterminate.

" But if the party who demurs will admit the existence of the *fact*, the evidence of which is loose and indeterminate, or in the case of circumstantial evidence, if he will admit the existence of the fact, which the circumstances offered in

evidence conduce to prove, there will be no more variance in this parol evidence than in a matter in writing, and the reasons for compelling the party, who offers the evidence, to join in the demurrer will then apply.

" It follows as a necessary conclusion, that if the demurrant will confess the matter of fact to be true, then he is admitted to his demurrer, and that if he is admitted to his demurrer the other party *must join* in the demurrer." (*Parker's Case*, Cro. Eliz. 753; *Wright* v. *Pindar*, Alleyn's R. 18 S. C. Style 22; *Boyd's Admr.* v. *City Savings Bank*, 15 Gratt. 501; *Trout* v. *Va. & Tenn. R. R. Co.* 23 Gratt. 619; *Green* v. *Buckner's Admr.*, 6 Leigh 82; *Rohor* v. *Davis*, 9 Leigh 30; *Whittington, &c.*, v. *Washington*, 2 Rand. 357; *Hansborough* v. *Thorn*, 3 Leigh 147; *Stevens* v. *White*, 2 Wash. 203; *Heard* v. *C. & O. R. W. Co.*, 26 W. Va. 455).

Wherever a party may properly demur to the evidence, the other party must join in demurrer.

*Taliafero* v. *Gatewood*, 6 Munf. 320, was an action of assumpsit to recourse upon the assignor, for the amount of an assigned note, which the assignee had failed to collect from the payor.

To show due diligence in trying to collect the note, the assignee introduced in evidence on the trial a transcript of the record of the suit he had instituted against the payor of the note, which showed that the declaration was filed on the 29th of April, 1807, but the date of the writ previously issued did not appear.

The defendant demurred to the evidence and spread upon the record the said transcript, the note, and the assignment thereof, which was proved to have been made by the defendant. The plaintiff joined in the demurrer and the jury found a conditional verdict for the plaintiff, and the Circuit Court gave judgment on the demurrer in favor of the plaintiff.

The Court of Appeals of Virginia set the demurrer aside, because the transcript offered in evidence *omitted* the *date of the writ*, a fact on which alone the point in issue must depend, which fact the court judicially knew had an *existence*, for every declaration is founded on a writ previously issued.

According to the English practice the demurrant was required to distinctly admit upon the record every fact and every conclusion which the evidence demurred to conduced to prove. The facts being settled one by one, the parties see the naked case, and understand distinctly on what facts the court will act; and thus passing these facts in review, the demurrant can more clearly see, before the irrevocable step is taken, whether he can safely demur; and the adversary is likewise enabled to discover whether there is not some weak point in his evidence, which he has it in his power to strengthen. (*Green* v. *Judith,* 5 Rand. 1; *Whittington* v. *Christian,* 2 Rand. 357.)

In this State, as it was in Virginia before this State was formed, the practice is well settled, that either party may demur to the evidence of the other, unless the case be clearly against the party offering the demurrer, or the court *should doubt* what facts should reasonably be inferred from the evidence demurred to; in which case the jury is the most fit tribunal to decide; putting all the evidence on both sides into the demurrer, and then considering as if the demurrant had admitted all that could reasonably be inferred from the evidence given against him, the credit of which has been impeached, and also all inferences from his own evidence, which do not necessarily arise from it. (*Whittington &c.,* v. *Christian &c.,* 2 Rand. 357.)

The case under consideration is one about the facts of which as introduced in evidence, and inserted in the demurrer, there can be no doubt.

It rests wholly upon the evidence introduced by the plaintiff as already set forth, and the whole, including the notarial certificate of protest, being "*matter in writing,*" should be regarded as *documentary evidence,* and that the notarial certificate should not be treated as the deposition of the notary, which though in writing would not be documentary evidence.

But if the notarial protest is not to be regarded as documentary evidence, but only as the deposition of the notary, the plaintiff ought not to have been required to join in the demurrer; if before it did so, it showed to the court, that it had inadvertently omitted to introduce evidence whereby

the demand of payment and the service of notice of protest could have been distinctly shown; and if it had inadvertently joined in the demurrer, it should have been permitted to withdraw its joinder before judgment, upon showing it had done so, and could supply such omitted evidence.

Regarding the evidence in this case as documentary, all our authorities agree, that the defendant, Buffington, having the right to demur to the evidence, the plaintiff was obliged to join in the demurrer.

In preparing this demurrer the parties as they settled the facts one by one saw the naked case and understood, or at least thought they did, on what facts the court would act, and having respectively tendered and joined in the demurrer, they must stand by what they have done, unless in a proper case and for sufficient reasons the demurrer should be set aside, which, under our practice, may be done on the motion of either party, or at the instance of the court itself at any time before a final judgment, as was done in the case of *Taliafero* v. *Gatewood* in 6 Munf. 320, and in *Fairfax's Admr.* v. *Lewis*, 11 Leigh 233.

In the former case the Superior Court gave judgment on the demurrer to evidence for the plaintiff, but this judgment was reversed by the Court of Appeals of Virginia, and instead of entering judgment in favor of the defendant set aside the demurrer, because it was so negligently framed, that there were not the necessary facts in the record, on which a judgment could be founded; and Judge Roane in delivering his opinion in that case said, "that the whole proceeding upon a demurrer to evidence is under the control of the judge before whom the trial is had; and if, owing to a mistake or other causes, a material fact be omitted, without which the merits of the case can not be decided, it ought to be corrected for the sake of justice."

In the case of *Fairfax, Admr.*, v. *Lewis,* 11 Leigh 233, the action was covenant, the issue on the plea of *covenants performed*, the plaintiff demurred to the evidence, and judgment was rendered in favor of the defendant. The Court of Appeals reversed this judgment and entered judgment in favor of the plaintiff, on the ground, that the evidence did not show *performance* by the defendant, though the facts if

they had been properly pleaded, showed a substantial defence, and gave judgment that the plaintiff recover his damages sustained, occasioned by the breach laid in the declaration, and remanded the cause to ascertain those damages by writ of inquiry.

When the cause went back, the Superior Court, on motion of the defendant, and against the objection of the plaintiff, set aside the demurrer and allowed him to file additional pleas.

Final judgment having been rendered in favor of the defendant, the plaintiff appealed, and the Court of Appeals held, that notwithstanding its former judgment, the Superior Court properly set aside the demurrer and allowed the pleadings to be amended, so as to let in a proper defence to the action.

In *Tomlinson* v. *Blacksmith*, 7 T. R. 132, leave was granted upon application of the plaintiff to amend his declaration after verdict by increasing the damages laid according to the truth of the case as found by the jury, the former verdict being at the same time set aside, and a new trial granted, to enable the defendant to make his defence to the demand so enlarged.

So also in *Stover* v. *Gordon*, 2 Chitty's R. 27, after trial and verdict for the plaintiff, the defendant was allowed to amend his pleas and have a new trial upon payment of costs.

The same liberality in regard to amendments was allowed in *Tabb* v. *Gregory*, 4 Call 225 and *Anderson* v. *Dudley*, 5 Call 529. In *Travis* v. *Insurance Co.*, 28 W. Va. 583, this Court held that the Circuit Courts of this State in the exer cise of their general common-law jurisdiction, may in their discretion permit the pleadings to be amended at any time before verdict found, wherever justice will be promoted thereby, without injury to the opposite party. (See also chap. 131, sec. 8 of the Code).

Tucker, P., delivering his opinion in *Fairfax, Admr.*, v. *Lewis*, *supra*, says : "It seems well established, that a defendant may, for good cause shown, even after verdict found against him, have the same set aside, and make a new defence upon the merits of the controversy.

"If this be so, it is not perceived why an equal latitude is not allowable in cases of demurrer to evidence; and I have never doubted, that while the proceedings are yet in *fieri* it is just as much within the legitimate authority of that tribunal to grant a new trial to either party after a demurrer to evidence, as after a general and unconditional verdict of a jury.

"Of late years parties are not held rigorously to their pleadings. He who demurs is often permitted to withdraw his demurrer, even after it has been argued and stood over for judgment, and to plead or reply *de novo* in order to let in a trial on the merits.

"And he whose pleading is demurred to, may in like manner waive his joinder in demurrer, and ask leave to amend. Now it is not perceived why greater rigor should prevail in relation to demurrers to *evidence*, where it is obvious, that the justice of the case requires them to be set aside.

"Taking then, the powers of the court to be the same on demurrers to evidence, as in other causes, there can be no doubt, that it was competent to the court in this case, for good cause shown, to set aside the judgment, the writ of inquiry and demurrer and allow the pleas to be filed."

Was good cause shown in the case in judgment for allowing the plaintiff, after the demurrer had been argued, while standing over for judgment, to withdraw its joinder in demurrer, granting the plaintiff a new trial that it might introduce further testimony to maintain the issue on its part?

We think that such cause appeared in the record, upon the face of the demurrer, and also by the affidavit of Layne filed in support of the plaintiff's motion for a new trial, and to withdraw its joinder in demurrer, that it might introduce further testimony.

It is apparent from the face of the record, that only two questions were in controversy between the plaintiff and the defendant, Buffington:

First. Did the notarial certificate of protest sufficiently show, that the note had been presented for payment at the Exchange Bank of Wheeling, Wheeling, West Virginia?

Second. Did it sufficiently show, that legal notice of the

protest of the note had been given to the endorser, Buf-fington?

From the notarial certificate it appeared, that on the 26th day of February, 1885, there existed better evidence of these facts than that furnished by the certificate, of the present-ment of the note for payment, and of the manner in which notice of the protest was given, and *that* was, the evidence of the notary himself, who at the date of the protest lived in the city of Wheeling, in this State, and within the juris-diction of the Circuit Court.

In the absence of evidence to the contrary, the reasona-ble as well as the legal presumption is, that he still resides there; and of the existence of this evidence of these ma-terial facts the court was judicially informed by evidence set forth in the demurrer.

If at the trial the notary had been examined as a witness, all uncertainty as to the place where the presentment for and demand of payment were made, and to what post-office the notice to the endorser was addressed, or to whom notice was delivered, would, in all probability, have been removed.

It is apparent, that the plaintiff when joining in the de-murrer was of the opinion, that sufficient proof of these es-sential facts appeared in notarial certificate of protest, while the defendant was equally confident in his opinion, that said certificate, unaided by other testimony, was insufficient to establish legal presentment or notice.

Upon a question involved in so much doubt and of such vital importance to the plaintiff, it might properly ask the court to grant a new trial and for leave to withdraw its join-der in demurrer.

In such circumstances, when the plaintiff made known to the court, that it had within its power, and could and would produce on a new trial other and better evidence of the dishonor of the note and of notice thereof; and also made known the character of this evi-dence, whereby the court could see, that by such evidence, if introduced, all uncertainty and doubt in regard to these material facts would be removed,—that the plaintiff's motion for a new trial and to set aside its joinder in demurrer should have been sustained.

If it be true as alleged in the affidavit of Layne, that the endorser, Buffington, "*always acknowledged his liability for the debt sued and promised to pay the same,*" and these facts had been proved on the trial, such acknowledgment and promise to pay the note, was a waiver of all notice, although nothing was said about notice in the acknowledgment, for in such case the holder is not bound to prove, that notice of the protest thereof was given him. (*Walker* v. *Laverty*, 6 Munf. 487; *Pate* v. *McClure*, 4 Rand. 164; *Devendorf* v. *W. Va. Oil and Oil Land Co.*, 17 W. Va. 174; Dan'l Nego. Inst., sec. 1,151.)

Whether we regard the plaintiff's motion as resting upon the uncertain and unsatisfactory evidence afforded by the notarial certificate, whereby the court was judicially informed of the existence of better evidence, which would in all probability remove all such uncertainty ; or, as resting upon the uncontradicted affidavit of Layne, that the defendant, Buffington, had always acknowledged his liability to pay the note, and had promised to pay the same, the Circuit Court erred, to the prejudice of said defendant, as well as of the plaintiff, in overruling its motion ; to the prejudice of the *plaintiff* if, judgment on the demurrer had been for the defendant, and to the prejudice of the *defendant*, as the judgment was in favor of the plaintiff.

If the plaintiff's motion had prevailed, and upon the new trial it had offered in aid of the notarial certificate of protest the oral testimony of the notary or other person in relation to the place where the presentment for, and the demand of payment were made, the name of the post-office to which the notice to the endorser, Buffington, was addressed, and the person to whom the notice was delivered, as stated in said certificate ; or that said endorser had acknowledged his liability and promised to pay the note,—the defendant would also have been let in to show by the same, or other competent testimony, that none of the things had been done, and that no such acknowledgment or promise had ever been made; in other words, both parties would have stood as if the issue had never been tried.

But as the plaintiff's motion to set aside the demurrer and award it a new trial was improperly overruled and judg-

ment upon the demurrer rendered in its favor, such judgment should not be affirmed by this Court, when the material question, whether the notarial certificate of protest alone sufficiently proves presentment, dishonor and notice, is involved in so much uncertainty, that the judicial mind may well doubt whether such evidence is sufficient to charge the endorser.

Such affirmance would deprive the endorser of the opportunity of making it may be a successful defence, which he would clearly have had the right and opportunity to make, but for the error of the court in overruling the plaintiff's motion.

It would be inconsistent with the plainest principles of right and justice to deprive the indorser of this privilege, because he mistook the law and inadvertently or unwisely demurred to the evidence; and where this Court *judicially knows*, that other evidence, within the reach of the parties, exists to show whether or not he is liable as such endorser.

The defendant ought not to be put in a worse position by a judgment in favor of the plaintiff, than he would have occupied, if the court had not erred in overruling the plaintiff's motion.

The circumstances of this case bring it precisely within the rule acted upon in *Gibson* v. *Hunter*, H. Blk. 207, and in *Taliafero* v. *Gatewood*, 6 Munf. 320, and we are therefore of opinion, that this demurrer has been so negligently framed, that it does not contain the necessary facts, on which a judgment can be safely founded, and that for these reasons the verdict of the jury and the demurrer to evidence should be set aside and a new trial granted. Assuming for the present, that the Circuit Court did not err to the prejudice of the defendant in overruling the plaintiff's motion for a new trial, and to set aside its joinder in the demurrer, we will now consider, whether the court erred in rendering judgment upon the demurrer to evidence in favor of the plaintiff:

It is quite certain, that there was no error in the judgment against the defendants, Wilson & Beardsley; for being the makers of the note, they were liable for the amount of

it, without presentment, demand, protest or notice thereof. (*Watkins* v. *Crouch*, 5 Leigh 522 ; *Armistead* v. *Armistead*, 10 Leigh 525 ; *Bank of Vergennes* v. *Cameron*, 7 Barb. 144 ; Dan'l Nego. Inst., sec. 643).

In respect to the endorser of a negotiable note, the rule is different.

The indorser is not the real debtor; he is only a surety. His undertaking is collateral, his contract is conditional, that if upon due diligence having been used against the maker, the money is not paid, he will become liable for it.

This *due diligence* is a condition precedent to a right of recovery against him.

Being only collaterally and conditionally responsible, the indorser must be dealt by with the utmost strictness. He had the right to bind himself or not, and of course to declare the terms on which he would be bound; his creditor must comply with these terms, and he can not alter them. If he engages to pay on demand at a certain time and place, the demand at such time and place is essential to his liability, and is an essential part of the holder's title.

When such note is made payable at a particular time and place, due diligence requires, that it shall be presented at that time and place, and it is incumbent on the holder of the note to show a compliance with them, on his part, by suitable averments in his declaration and by proper proofs at the trial.

To charge the indorser it is indispensible, that the note should be presented for payment, and payment thereof demanded at the time and place designated in the note, and that due notice be given him that the demand is ineffectual; and it is necessary to prove that the presentment for payment was *there* made, otherwise the indorser will be absolutely discharged. (*Watkins* v. *Crouch*, 5 Leigh 522; *Magoun* v. *Walker*, 49 Me. 420; Story on Prom. Notes, sec. 230; 1 Pars. Notes & Bills, 431; 1 Dan'l Nego. Inst., sec. 644). Where the note is in its terms payable at a bank, it is sufficient if the note is in the bank at maturity ready to be delivered on payment, should the maker come to pay it.

But if the bank, where the note is made payable, is the holder, and the maker neglects to appear there when the

note falls due, a formal demand by the default of the maker becomes impracticable. All that can in fitness be done, or ought to be required, is that the books of the bank should be examined to ascertain whether the maker had any funds in their hands, and if not then there was a default, which gave the holder a right to look to the indorser for payment.

If the note is by its terms payable at a particular bank, and the holder thereof, or his agent, makes demand there, or leaves the note at the bank, and authorizes the bank to receive payment and give up the note, and the maker neither offers payment nor has funds in the bank appropriated to the payment of the note, no other presentment or demand is necessary, and the note is dishonored.

But whether there are funds provided or not, the *note must be at the bank* at its maturity, for otherwise there can be no demand, constructive or actual. (*Shaw* v. *Reed*, 12 Pick. 132; *Berkshire Bank* v. *Jones*, 6 Mass. 524; *Woodbridge, &c.*, v. *Brigham, &c.*, 13 Mass. 556; 1 Am. L. Cas. 454, 363; *Lee Bank* v. *Spencer &c.*, 6 Metcalf 308; 1 Parsons Notes & Bills 367.)

Where a negotiable note is made payable at a bank the demand of payment must be made *at the bank*, and it is not sufficient to show a demand of the *cashier*. (2 Edw. Prom. Notes, sec. 682; *Bank of Syracuse* v. *Hollister*, 17 N. Y. 46; *Seneca Bank* v. *Neass*, 5 Denio 329; same case, 3 Com. 442; Dan'l Nego. Inst., sec. 644; *Magoun* v. *Walker*, 49 Me. 420.)

This point was expressly decided by this Court in *Bank* v. *Hysell*, 22 W. Va. 142, where the question arose upon a general demurrer to a declaration against the maker and endorser of a negotiable note.

The declaration simply stated, that the note was presented at the close of banking hours to the *cashier* of the Bank of Huntington (where it was payable) for payment, which was refused, and thereupon it was duly protested for non-payment, notice whereof was given to the maker and endorser; and this Court held, that the declaration was fatally defective on general demurrer, because it did not state when the note was presented for payment, or where it was presented. (*Seneca County Bank* v. *Neass*, 5 Denio 329; Dan'l Nego. Inst., secs. 644, 962.)

When a foreign bill of exchange is presented for acceptance or payment, is refused, the holder must take a protest in order to charge the drawer or endorser.

Section 6 of chapter 51 of the Code declares, that "notaries shall have authority to demand acceptance of foreign and inland bills of exchange, including checks, and to demand payment thereof, and negotiable promissory notes, and protest the same for non-acceptance or non-payment, as the case may require, and perform such other duties as by the law of nations or commercial usage may be performed by notaries public."

By section 7 of chapter 99 of the Code it is further declared, "Every promissory note or check for money payable in this State at a particular bank, or at a particular office thereof, for discount and deposit, or at the place of business of a savings institution or a savings bank, and every inland bill of exchange payable in this State shall be deemed negotiable, and may, upon being dishonored for non-acceptance or non-payment, be protested, and the protest be in such case evidence of dishonor in like manner as in the case of a foreign bill of exchange.

And by sec. 8 of said chap. 99 it is further declared, "The protest in the case of a foreign bill, note or check, and in the other cases mentioned in the preceding section, shall be *prima facie* evidence of what is stated therein, or at the foot, or on the back thereof, in relation to presentment, dishonor *and notice thereof.*"

These provisions place inland bills of exchange and negotiable promissory notes on a level with foreign bills of exchange so far as presentment for acceptance or payment and dishonor are concerned. The effect of the protest, as an instrument of evidence, will hereafter be considered.

As in foreign bills of exchange, so now, by virtue of our statute, due diligence requires, that if a negotiable note be dishonored for non-payment, the holder is required to protest the same in order to charge the endorser.

By the law merchant the protest was a formal declaration by a notary of the presentation, demand and dishonor of the bill or note, and that the holder looked to all the parties for payment; but the notice was no part of the protest. That

was a fact, necessary to be proved, to entitle the plaintiff to a recovery against the endorser, which might be proved by the notary or other testimony at the trial. ( *Walker* v. *Turner*, 2 Gratt. 536; *Real estate Bank* v. *Bizzell*, 4 Ark. 189.)

In order to charge the endorser it is not only necessary to aver and prove, that the note at its maturity was presented for payment, and payment thereof demanded at the place of payment designated in the note, but it must also be averred and proved, that the note was protested for non-payment thereof, and that notice of the dishonor of the note was duly given to the endorser.

When a negotiable note is dishonored it is the duty of the holder to give immediate notice of such dishonor to the endorser.

It is regarded as entering as a condition in the contract of the endorser of a note, that he shall only be bound in the event, that payment was duly demanded ; and he notified if it is not made.   And in default of notice of non-payment, he is at once discharged, unless some excuse exists which exonerates the holder.   (Dan'l N. Inst., sec. 970.)

When the endorser resides in the same city or town where the demand is made, the notice must be personal or left at his dwelling house or place of business.

If he resides at a different place notice must be forwarded on the day of demand, or the day after, and by the next mail, directed to the endorser at the place of his residence, or to his nearest post-office, or where he usually receives his mail matter, advising him of the protest.

Where the holder and endorser reside in different places and there is mail communication between them, the notice must be sent to the endorser by the first mail which leaves after the day of dishonor is past, and does not close before early and convenient business hours of the day succeeding the day of dishonor. (Parsons Notes & Bills, 511 ; 1 Am. L. Cases, 390; *Lawson* v *Farmers' Bank*, 1 Ohio St. 266 ; Dan'l Nego. Inst., sec. 1,039).

Demand and notice in every case are conditions precedent to the holder's right to recover, and in every case the endorser is entitled to strict notice.

The distinction between the different modes of giving notice is this—that where the holder and endorser reside in different places, if the holder deposit the notice in the post-office in due season, he has no further burden on him as to the actual receipt of it by the latter; but when the parties both live in the same town, the sender of the notice is bound to show that it was actually received by the endorser in due season, or left at his dwelling house or place of business which in that case is deemed equivalent to personal service. (Dan'l Nego. Inst. § 1,005; *Smede* v. *Utica Bank*, 20 Johns 372; 15 Gratt. 501, *supra;* 2 Rob. New Pr. 191.)

The notice should be directed to the post-office at or nearest to the endorser's place of residence, unless he is accustomed to receive his letters at another post-office, in which case it should be directed to him to such other post-office.

The burden of proving, that notice was duly given so as to charge the endorser of a note, rests upon the plaintiff and he must distinctly show, that it was given on the proper day.

But when it is shown, that the notice was, on the proper day deposited in the post-office, properly addressed in respect to *name and post-office,* no further proof is necessary as " due diligence " will then have been exercised. (Dan'l Nego. Inst., §§ 1,050, 1,051; *Friend* v. *Wilkinson & Hunt,* 9 Gratt. 31; 1st Ohio St. *supra*). What constitutes due diligence as to presentment or notice under the circumstances of the case is a question of law; and where the facts are undisputed, it is a question of law exclusively. ( *Wheeler, &c.,* v. *Field,* 6 Metc. 290; *Davis* v. *Herrick,* 6 Ohio 55; *Bennett* v. *Young,* 18 Pa. 262; 1 Am. L. Cases 447; *Bank of Columbia* v. *Lawrence,* 1 Pet. 578; *Smedes* v. *Utica Bank,* 20 Johns. 372).

By the law merchant the original certificate of protest whenever admissible in testimony is regarded as *prima facie* evidence of all the facts stated therein, so far as they came within the scope of the notary's duty in making the presentment, demand and protest. ( *Townley* v. *Sumrall,* 2 Peters 170; Dan'l Nego. Inst. sec. 959; 1 Pars. Bills & Notes 635).

When the notary public having charge of the bill or note for presentment, has presented it for acceptance or payment, as the case may be, and protested it in the event of

its dishonor, his official duty is performed. It being no part of the notary's official duty to give notice, the certificate of protest made out by the notary is not, by the law merchant, evidence of any fact stated therein respecting the service or transmission of notice, but only of such things as pertain to his official duty in respect to the protest. (*Bellemyer* v. *Bank*, U. S. 4 Whart. 113; *Bennett* v. *Young*, 18 Pa. 262; *Walker* v. *Turner*, 2 Gratt. 536; *Rives* v. *Parmley*, 18 Ala. 256; Dan'l Nego. Inst. §§ 961, 991).

The notarial protest not being evidence at common-law of notice to an endorser, has now as an instrument of evidence to prove that fact, only such effect as is given to it by the terms of the statute.

In the absence of the statute it was not evidence of notice; under the statute it is made *prima facie* evidence " of what is stated therein, or at the foot or on the back thereof in relation to presentment, dishonor and *notice thereof,*" that is to say, of the *facts so stated.*

That such is the proper construction of the words " what is stated therein," is apparent because " notice " is not properly speaking a *fact*. Certain acts when performed, constitute "notice," but notice itself is a conclusion of law, resulting from proof, that these acts have been performed; and when our statute declares, that the protest shall be "*prima facie* evidence of what is stated therein in relation to presentment, dishonor and notice thereof, " it can only mean, that it shall be evidence of the *facts* stated therein, which when performed, constitute notice; and so also in regard to the facts, which constitute presentment and dishonor.

Hence, if the protest only state the conclusion without the acts done, the court will be unable to determine whether notice has been given or not; and in such cases the protest affords no evidence what acts have been performed, and they are left as they were at the common law, to be proved at the trial by other evidence.

We are sustained in this construction of the words "what is stated therein," found in our statute, by comparing them with the parallel words found in similar statutes in other States relating to the same subject. As all these statutes have

been enacted in aid of the law merchant it is fair to presume, they were intended to establish the same rule as to the effect of the notarial protest as an instrument of evidence "in relation to presentment, dishonor and notice thereof."

In the statutes of the States of Maine, New Hampshire, Connecticut, New York, Pennsylvania, Indiana, Michigan, Minnesota, Wisconsin, Georgia, California, Arkansas, Texas and Mississippi the protest is declared to be *prima facie* or presumptive "evidence of the *facts* stated therein."

In Missouri it is evidence of the demand and refusal to pay a bill of exchange or promissory note at the time and in the manner stated in the protest.

In Illinois it is evidence of the *time* and *manner* in which the notice of dishonor has been served, of the names of the persons, to whom directed, and of the description and amount of the instrument protested.

In New Jersey, upon the death or absence of .the notary, his record of the protest, or a certified copy thereof, is competent evidence to prove the time and place of the demand, and upon whom it was made, how it was served, and *when*, and if *sent*, in what manner, to whom, and where, and when put into the post-office.

In Louisiana, it is the duty of notaries to keep a record of protests of bills and notes; of the notices given by them; the date of the notices, and the manner in which they were served or forwarded, which record is made legal proof of the notices.

Notaries are authorized to make mention of the manner and circumstances of the demand, in their protests, and by certificates added thereto, to state the manner in which any notices of protest were served or forwarded; and whenever they have done so, a certified copy of such protest and certificate is evidence of all matters therein stated. (R. S., 1856, p. 45.)

In Missouri, the protest is evidence of a demand and refusal to pay a bill of exchange or negotiable promissory note *at the time* and *in the manner* stated in such protest. (R. S., 1855, v. 1, p. 298.)

In Iowa the "protest is *prima facie* evidence of what it

recites concerning the dishonor and notice of a bill of ex-change or promissory note."

From an examination of these several provisions, it is ap-parent, that there was no intention to change the well settled rule in commercial law, that, "when the facts are undis-puted, what constitutes due diligence is exclusively a ques-tion of law ;" to declare, that the protest should become ev-idence of anything in " relation to presentment, dishonor and notice thereof," except the *facts* stated therein, leaving in all cases the conclusions of law resulting from such facts to be determined by the court.

To what extent do sections 6 and 7 of chapter 51 of the Code of W. Va. affect the duty of the notary in regard to the mode or measure of the proof of presentment, dishonor and notice thereof necessary to charge the endorser ?

In regard to a foreign bill of exchange, all the official acts of the notary having the bill in charge were performed when he had presented it for acceptance or payment, as the case might be, and protested it in the event of its dishonor.

Of these facts, and of no other, his notarial certificate was *prima facie* evidence, because it was his official duty to per-form them and to make his notarial certificate thereof.

By our statute, the *official duties* of the notary are not *enlarged*,—for the protest is still sufficient, if it sets forth the *time* and *place* of presentment; the fact and manner of presentment; the demand of payment; the fact of dishonor; the name of the person by whom, and the name of the per-son to whom the presentment was made ; and it is not in-cumbent upon him to go further and give notice.

But if he does so, and gives notice, and desires to make his protest evidence of that fact, he should state the per-son notified ; the manner of notification, and when not served on the party in person, it should specify distinctly whether it was delivered at his house or place of business; or if sent by mail, that it was addressed to the post-office nearest to him, or at which he usually received his business letters. (*Dickens* v. *Beal*, 10 Pet. 282; *Bank of Roches-ter* v. *Gray*, 2 Hill 231 ; Dan'l Nego. Inst. sections. 950, 960 ; Id. § 1,005.)

The notice of protest may still be given by a private person

as well as by a notary in the same manner and with the same effect as it might have been given before the enactment of our statute on that subject.

The statute making such *ex parte* statements of the notary, evidence of notice of dishonor, being an innovation on the common law, which excludes all such statements, should be strictly construed and confined to the facts stated in, or on the certificate of protest, because it is only by the terms of the statute, that it becomes evidence of that fact.

But it must be borne in mind, that it can not be inferred from the mere fact of protest, when it is admissible in evidence of the manner and service of notice, or of the facts stated respecting the giving of notice, that any step was regularly taken, or that any fact existed which is not certified to. The admission of the certificate of protest as evidence only makes it evidence of such things as it distinctly states, and of which it purports to give evidence. (Dan'l Nego. Inst. sec. 962; *Bradshaw* v. *Hedge, &c.*, 10 Iowa 402; *Sprague* v. *Tyson*, 44 Ala. 340; *Turner* v. *Rogers*, 8 Ind. 140.)

We must take the statements of the notarial protest as *prima facie* true, but the burden of proof is upon the plaintiff to show, that all the steps which are necessary to charge the endorser were taken ; and no step is presumed to have been taken without evidence.

When the protest is only evidence relied on to establish due presentment, dishonor and notice, such protest must contain averments sufficient to show, that every thing requisite has been done on the part of the holder, or his agent, to authorize the demand upon the endorser.

The adjudicated cases will illustrate what I have said, as to what constitutes due diligence of presentment, dishonor and notice sufficient to charge an endorser.

*Bradshaw* v. *Hedge* & *Heaton*, 10th Iowa 402, was an action of assumpsit against the makers and endorser, in which there was verdict and judgment for the plaintiff. The only evidence of notice was the notarial protest, from which it appeared, that the note had been duly presented at the banking-house of the makers and payment thereof demanded ; that the note was protested for non-payment ; and

that a "notice of the protest was (on the proper day) placed in the post-office in the cityof DesMoines, enveloped, postage prepaid, directed to the endorser, Dubuque, Iowa." The trial court instructed the jury, that the protest did not show the residence of the endorser; and in the absence of other proof of his residence and notice of non-payment of said note at such place, they should find a verdict for the endorser. The jury having found for the plaintiff, judgment *non obstante verdicte* was rendered in favor of the endorser.

Upon appeal the Supreme Court set aside this judgment as unauthorized, but being of opinion, that the evidence was insufficient to charge the endorser, set aside the verdict.

Baldwin, Judge, delivering the opinion of the court, quoting sec. 2,414 of the Code of Iowa, which is similar to the statute in this State, making the protest evidence of what is stated therein, said : "This evidence is *ex parte* in character, and its admissibility is an innovation upon the common law rule of evidence, giving to the opposite party the right to cross-examination, but the change is justified by its advantage to the commercial interests of the country. While the law allows such evidence to be admitted, it can only be considered as evidence of those facts, which by the established rules of commercial usage, namely, the demand at maturity of the maker and notice to the endorser of non-payment. The protest in this case does not show, that Dubuque was the place of residence of the endorser or his post-office address, nor was there any evidence introduced to establish this fact except the protest. The court properly instructed the jury and the verdict should have been for the endorser.

*Sprague* v. *Tyson*, 44 Ala. 338, was a bill in chancery against the endorser of a bill of exchange, who was a married woman. She admitted that she had made and endorsed the bill, but denied due diligence by the holder against the acceptor. The only evidence of the plaintiff on this point was the protest, which stated, that notice thereof, was deposited in the post-office at Mobile, directed to defendant at Mobile and to Portland, Dallas county, Ala.

Upon appeal, the Supreme Court of Alabama held that the protest was not sufficient notice to charge the endorser.

Safford, J., delivering the opinion of the court, said:—
"There is an entire failure on the part of the plaintiff to prove, that the notices to Portland and Mobile, were directed to the residence or nearest post-office of the endorser, either at the time of signing the bill or of giving notice. That the bill purports on its face to have been made at Portland, Dallas county, is not alone sufficient evidence of the residence or post-office of the party sought to be charged. The holder must use reasonable diligence to ascertain his address. For the omission of the complainant to prove, that he had given due notice of non-payment, the decree in favor of the complainant was reversed.

*Turner* v. *Rogers*, 8th Ind. 139, was an action brought to charge the endorser of three notes, drawn, endorsed and payable in Ohio. The only evidence of due diligence to charge the endorser was the protests, and the trial was by the court. The only question was whether the protests were sufficient evidence of diligence to charge the endorser. They state the presentment and non-payment, and then say: "Whereupon I then protested the same for non-payment, and notified Henry Turner and John H. Woodfill, (a subsequent endorser) by letter to each at New Albany, Indiana, per mail, without delay the same day."

Goodkins, J., delivering the opinion of the court, said:—
"We think the plaintiff did not entitle himself to a verdict by the evidence offered. He gave no evidence, that the defendant resided in New Albany, or any where else. The notary's statement in the protest, that he notified the endorsers is qualified, by specifying the notices to them at New Albany. The bill was drawn, endorsed and payable in Ohio. There is no presumption, that they resided at New Albany. "

The same doctrine was announced by the Supreme Court of Arkansas in— *Sullivan, Admr.*, v. *Deadman*, 19 Ark. 486.

In that case the notary annexed to his protest a certificate, which stated he gave notice to the endorser " at Arkansas City, county of Arkansas, State of Arkansas, " by putting a written notice addressed to him at that place in the post-office in New Orleans on the day of the protest in time to go by the first mail.

7°

In its opinion the Supreme Court of Arkansas said that the proof of notice was incomplete, because there was no evidence in connection with the protest to show, that the post-office at Arkansas City, to which it seems the supposed notice was sent, was such a one, as according to the law merchant would charge the endorser with notice, as that it was the office to which he usually resorted for his letters; or that he resided in the country and not in town; and that the post-office was the seat of justice for that county, or that he lived in a town where there was no post-office, and that the office to which the notice was sent, was the nearest one to which letters addressed to that town were usually sent. "

*Stiles* v. *Johnson*, 55 Miss. 470, was an action to charge T. D. Stiles, the endorser of a note of $1,150.00, payable at the National Bank of Memphis. The only evidence of notice was the protest, which, after stating presentment, demand and dishonor and protest, stated that the same day of the demand, May 6, 1871, he directed written notice of the protest to T. D. Stiles, Esq., Vicksburg, Mississippi, at Memphis, before the departure of any mail, postage paid, and placed the same in the post-office there.

To this evidence the endorser demurred and the plaintiff joined, and the court gave judgment for the plaintiff.

From this judgment the endorser appealed, and the Supreme Court reversed the judgment, awarded a re-pleader and held, " that there was a fatal defect in the plaintiff's case, but for the irregularity in the pleadings, would have entitled the plaintiff in error to a reversal of the judgment; as there was no evidence, that Stiles, the endorser, resided at Vicksburg, or that Vicksburg was his place of business, or his nearest post-office or the one at which he received his mail matter. For all that appeared, the notice might as well have been sent by mail to Boston or New Orleans. " ( *Walker* v. *Tunstall*, 3 How. 259; *Ellis* v. *Commercial Bank*, 7 How. 294).

In *Rives* v. *Parmley*, 18 Ala. 256, the plaintiff and defendant were both endorsers of a bill of exchange. The action was assumpsit brought by one to charge the other as such endorser. The only evidence of notice to the drawer was that contained in the protest, which was in the following

words: "Notice of protest left at the boarding-house of P. R. Rives and at the office of S. Parmley each the same day." The trial court charged the jury, that this evidence was sufficient to charge the drawer, which charge was excepted to, and was assigned as error. There was a verdict for the plaintiff, on which he had judgment. This judgment was reversed by the Supreme Court, because it did not appear, that due diligence had been used to charge the endorser. Dragan, C. J., delivering the opinion of that court, said: "That the language does not afford evidence of such diligence as the law requires to charge a drawer or endorser."

"The circumstances under which the notice was left is not shown; it does not appear, that the drawer was at home when the notary called; nor whether any inquiry was made for him; nor whether the notice was handed to any person to be delivered to him; nor whether any person was at the house or not.

"This evidence is too uncertain to charge the defendant, for consistently with the language of this protest, the notice might have been left at his boarding-house in a manner wholly insufficient to charge him.

"But it is urged, that we should *presume*, that the notice was left at the house in a proper manner and under circumstances, that would constitute due diligence. We can indulge in no *presumption*, neither that there was due diligense used, nor that the notary was guilty of neglect. We can only examine whether the evidence is of such a character to authorize us to say, that due diligence was used, and if it be not of that character, then we can not hold the plaintiff entitled to recover, for the *onus* is upon him to *prove* diligence as a prerequisite to his right to recover, and if the evidence be too uncertain to enable the court to see, that 'due diligence' has been used, then the condition precedent to the plaintiff's right of recovery is not shown to have been performed.

"The notice might have been left at the boarding-house of the defendant under circumstances, that would have charged him, or under circumstances, that would not, and the burden of proof is on the plaintiff; I therefore must say, that

he has not offered such proof as will show, that he has used due diligence."

*Lanson* v. *Sherwood*, 1 Starkie 314, was an action by the endorsee against the endorser of a bill of exchange. The witness called to prove notice to the endorser of the dishonor of the bill, stated, that he sent a letter to him containing such notice *two* or *three* days after the dishonor of the bill, but the witness was unable to state whether it was *two* or *three* days.

In that case it was admitted, that notice on the second day was in good time, but the plaintiff contended, that although the witness could not state with certainty whether the notice had been sent on the second or third day, yet since this might be ascertained by the production of the letter itself, which was in the possession of the defendant, it was incumbent on him by the production of the letter to show, that sufficient notice had not been given; and at all events in the absence of the letter, there was evidence to go to the jury, that sufficient notice had been given.

But Lord Loughborough said: "The witness says *two* or *three* days, but the third day would be too late. It lies upon the plaintiff to show, that notice was given in due time; and I can not go upon probable evidence without positive proof of the fact. Nor can I *infer* due notice from the nonproduction of the letter; the only consequence is, that you may give parol evidence of it. The *onus probandi* lies upon the plaintiff, and since he has not proved due notice, he must be non-suited."

The place of the date of the bill is *prima facie* evidence, that the drawer resides there, but it is not *prima facie* evidence of the residence of the endorser, and there is no *prima facie presumption*, that the endorser resides at the place of the date of the note or bill, or at the place of payment thereof.

In the case of an endorser it would clearly be insufficient to send notice to the place where the bill or note is dated without showing something more.

Not being original parties to the bill or note, they may not know where the drawer or other endorsers reside. The holder is bound to make some inquiries on the subject, at

the place where payment was demanded. (*Lowery* v. *Scott*, 24 Wend. 358).

When it is proper, that the notice should be sent by mail, putting the letter containing it properly directed, seasonably into the post-office, is either notice in itself or such due diligence as is equivalent thereto.

The letter containing the notice to an endorser may be directed to him at his place of residence, (6 Wheat. 102) or to the post-office nearest thereto, (11 Johns. 232; 10 Wheat. 582) or at a particular post-office directed by him, or that at which he usually resorts for his letters. (16 Johns. 221; 1 Peters 583). If he is in the habit of receiving letters at two post-offices, notice directed to either will be sufficient.

In *Halliday* v. *Martinet*, 20 Johns. 168, the action was assumpsit against maker and endorser of two notes. They had been duly protested, but the notary was dead.

To prove notice, the protest and the notary's register of protests were introduced in evidence, whereby it appeared, that the notary made inquiry for the maker to demand payment, but could not find him; and that a notice was put in the post-office for P. L. M., the endorser, and left one for him at the holder's. On the trial the plaintiff was non-suited, and he sued out a writ of error to this judgment.

Woodsworth, J., delivering the opinion of the court, said : " It remains wholly uncertain whether diligent inquiry was made for the endorser, and that he could not be found ; and whether he resided in New York or at what other place.

" The notice in the post-office was a nullity unless it appeared, that he resided at some place, other than New York, and if he did, then it should appear that the notice was directed to him at that place. If the notary had stated, that the *indorser* could not be found, as he has done with respect to the *maker*, he would have made out sufficient to recover; " but as it was the judgment of non-suit, was affirmed.

In *Smedes* v. *Utica Bank*, 20 Johns. 372, the principal question was whether legal notice had been given to the endorsers.

The witness introduced to prove this fact, testified that on

the day the note fell due, he delivered notice at the post-office, or at the law-office of the endorser, but could not tell which; that he had no recollection of ever leaving at the post-office a notice addressed to an inhabitant of the village, and he believed the notice was left at the endorser's office, but could not say positively, that it was not at the post-office.

Woodworth, Judge, delivering the opinion of the court, said:—" From this evidence the presumption is rather stronger, that notice was left at the endorser's office, than at the post-office ; still however the fact is *doubtful.* The notice at *one* place would be *sufficient,* at the other a *nullity. The question is not what inference the jury might draw,* but what *testimony* does the *law require* is a condition precedent, and that *strict proof* is required. "

" The law has allowed the endorsor this protection; *nothing short* of clear proof of notice shall subject him to liability. A relaxation of this rule, would make the liability of sureties depend on the various and different opinions, which different juries would form on the same state of facts ; a doctrine so mischievous ought not to be tolerated. "

See also *Bank of Virginia* v. *Cameron,* 7 Barb. 143.

The following cases seem to hold a different doctrine in regard to what constitutes legal notice to an endorser.

*United States Bank* v. *Smith,* 11 Wheat. 171, was an action against the endorser of a promissory note, payable at the office of discount and deposit of the United States Bank in the city of Washington. About the making, endorsement, dishonor and protest of the note, there was no doubt. The principal question was, whether legal notice of such default had been given to the endorser ?

All the testimony on that point was, that of the notary public, who was produced and examined as a witness at the trial, who swore, that " on the day the note fell due he presented it at the store of the maker, and demanded payment of his clerk, who replied that the maker was not within, and he would not pay it; and that on the same day, he put in the post-office a notice of non-payment, addressed to the defendant at Alexandria. "

The defendant demurred to the evidence and the plaintiff

joined in the demurrer.   The defendant contended, that the
evidence given by the notary (which was all the evidence
on that point) wholly failed to prove, that the endorser's
place of residence was at Alexandria, and the trial court
gave judgment for the defendant.

Upon a writ of error in the Supreme Court of the United
States, this judgment was reversed, and gave judgment on
the demurrer in favor of the plaintiff.

Thompson. J., delivering the opinion of the court, said:
"If the defendant's place of residence was at Alexandria,
it is not denied but that due and regular notice was given
him.   The notary was a sworn officer, officially employed
to demand payment of this note, and it is no more than
reasonable to presume, that he was instructed to take all
necessary steps to charge the endorser.   This must have
been the object in demanding payment of the maker.   And
it is also fair to presume, that he made inquiry for the resi-
dence of the defendant before he addressed a letter to
him; for it is absurd to suppose he would direct a letter to
him at that place without some knowledge or information,
that he lived there, this being the usual and ordinary course
in such transactions, and with which the notary was, no
doubt, well acquainted.

"The jury would undoubtedly have been warranted to
infer, that the defendant's residence was at Alexandria.   If
that was not the fact, this case is a striking example of the
abuse which may grow out of demurrers to evidence; for a
*single question* to the witness would have put at rest that
point one way or the other, if the least intimation had been
given of the objection.   It was manifestly taken for granted
by all the parties, that the defendant lived at Alexandria.
And if a party will upon the trial remain silent, and not
suggest an inquiry, which was obviously a mere omission on
the part of the plaintiff, a jury would be authorized to draw
all inferences from the testimony given, that would not be
against reason and probability; and the court upon a de-
murrer to evidence will draw the same conclusions, that the
jury might have drawn."

I have quoted thus largely from the opinion in this case,
not because I dissent from the conclusion reached, but be-

cause it has, at least in one case, been made the basis of a similar conclusion upon a wholly different state of facts. (*Linkons* v. *Hale*, 27 Gratt. 688.) The court in this case in a great measure rests its conclusion upon what seemed to be the delinquency or indifference of the defendant in the examination of the witness at the trial, thereby practically misleading the plaintiff into the belief, that it was "manifestly taken for granted, that the defendant lived at Alexandria."

Great stress is properly laid upon the circumstance, that the witness possessing the knowledge to make this essential fact certain, was examined in open court, where the defendant had the opportunity as well as the right to cross-examine him, and by doing so, could by a single question, have removed any doubt on the subject; and failing to do so, the jury might justly presume, that if the fact had been different he would have shown it by the witness.

It seems to me, that the court reached its conclusion by a just application to the circumstances of that case, of the well established rule of evidence, that where a party has at his command or under his control evidence which will make a doubtful point certain, and he withholds or fails to use it, the fair presumption is, that if he had done so, it would have been against him; and further, that the conclusion reached by the court in that case ought to be confined to cases where the party demurring to the evidence had had the opportunity of cross-examining the witness, and that it can not properly be applied to cases where the evidence was wholly of "matter in writing," or documentary, and in consequence thereof, no such opportunity for cross examination had been afforded.

The case of *Linkons* v. *Hale*, 27 Gratt. 688, to which I have referred, was an action of debt against the endorsers of a negotiable note. The issue was upon the plea of *nil debet*. The only question in controversy was whether the evidence on the subject of the notice of the protest of the note was sufficient to charge the defendants as endorsers.

The only evidence on that subject was contained in the notarial certificate of protest. This certificate was in the usual form, and after setting forth the dishonor of the note,

stated:—" I after three o'clock P. M. of this day placed in the post-office of this place four written notices; one directed to the payer, and one directed to John Hale, Abraham Smith and B. R. Lincons at Blacksburg, Virginia, informing them of the non-payment and protest of the note."

The defendants demurred to the evidence and the plaintiff joined in the demurrer, and the Circuit Court gave judgment for the defendants, but the Court of Appeals reversed this judgment and rendered judgment in favor of the plaintiff against the defendants.

It will be perceived at a glance, that the only question presented was whether it sufficiently appeared from the certificate of protest, that "Blacksburg" was the endorsee's place of residence.

Moncure, J., delivering the opinion of the court in that case, in substance said:—" We are decidedly of opinion, that this certificate of the notary affords sufficient evidence in regard to the notice of protest to the endorsers to warrant the court in rendering judgment against them and demurrer to evidence; that while it is not expressly stated in the certificate, that the post-office of the endorsers was at 'Blacksburg, Virginia,' nor that he was informed upon due inquiry, that such was the post-office, in either of which cases notices to them sent to the post-office was sufficient, and it may be properly inferred, that such was the post-office · of the endorsers, or at least, that the notary upon due inquiry was so informed."

In support of this opinion the learned judge says:—" We need only rely on the case of the *United States Bank* v. *Smith*, 11 Wheat. 171. That case is so directly in point, and so much like this in all its features, that we deem it proper to quote it largely from the judgment in that case." His quotation on the subject of notice is the same I have already given.

Assuming as he did, that the two cases were "alike in all their features," it is not surprising, that the conclusion in each case was the same.

No other authority is referred to and no case is cited to justify the transmutation of a correct conclusion, resting on the special circumstances of a particular case, into a general

71

rule alike applicable to all cases; the logical result of which will operate to relieve the plaintiff from the *burden of proving*, that due notice *has been given*, and imposing upon the endorsers the *burden of proving*, that such *has not been given*, which in the vast majority of cases would be an impossibility.

 To establish such a rule is to deprive the endorser of all the protection which the law throws around him; and the conditional contract, which the law implies from his endorsement, might at the will and pleasure of the notary public be changed into an unconditional promise to pay the debt of the acceptor or maker, for which he was in no manner legally bound.

After a careful review of the authorities, I am unable to concur with the learned judge in his reasonings, or in his conclusion, that *in the case* then under consideration a jury would have been warranted to infer from that evidence, that the residence of the endorsers was at "Blacksburg, Virginia," or that a court, upon a demurrer to that evidence, *fairly* make such inference.

 The case of *Wamsly* v. *Rivers*, 34 Iowa 463, seems to me, if possible, to be more objectionable than the one last cited.

That was an action against the endorsers of a negotiable note, and the only question was whether they had notice of non-payment and protest. The only evidence on this point was the certificate of protest, which stated: "Be it known, that I, &c., * * * * * * * do certify, that on the day of the date of this protest I notified the maker and endorsers of the hereunto attached note, to wit, Louisa A. Rivers, John D. Rivers, DesMoines, H. C. Brewster, cash., Rochester, N. Y., of the within protest by notice in writing and print, by me signed, of the same date of the protest, and which I the same day delivered in person at the post-office, under cover, as follows: Louisa A. Rivers, John D. Rivers, DesMoines, H. C. Brewster, cash., Rochester, N. Y., postage prepaid."

Section 4,011 of the statute of the State of Iowa is substantially the same as sec. 7 of chap. 51 of the Code of W. Va., declares, "The usual protest of a notary public, without

proof of his signature or notarial seal, is *prima facie* evidence of what it recites concerning the dishonor and notice of a bill of exchange or promissory note."

Under this statute and upon the facts stated in said certificate of protest the Supreme Court of Iowa held, that the "*bare certificate of the notary, that he notified the maker and endorsers*" is itself *prima facie* evidence that they were so notified. If he specifies the *mode* in which he did it, such specification does not destroy the *prima facie* case, nor render it necessary to prove, that such mode would effectuate such result, unless it should appear affirmatively, that the mode adopted could not have done so.

If such be a correct construction of the statute, making the certificate of protest "*prima facie*" evidence of what is stated therein, in relation to presentment, dishonor and notice thereof, it must follow, that a statement by the notary in his notarial certificate, that he "*duly* presented the bill or note for payment," must also be *prima facie* evidence, that on the day it became payable, he presented for payment the original bill or note to the proper person, at the proper place, on the proper day, and demanded payment thereof, each of which is an essential fact to enable the court to determine, whether due presentment and demand of payment have been made; for it could not be *duly* presented for payment, unless these acts had been performed in that manner, on that day to the proper person and at that place!

Such a construction would destroy the well established rule "that where the facts are undisputed, what constitutes due diligence as to presentment, or notice of dishonor is a question of law to be decided by the court."

It would substitute for the judgment of the court the *opinion* of the notary what facts constitute "due diligence," from which opinion in most cases there would be no escape.

It would effectually deprive the endorser of all means of successfully rebutting the *prima facie* case, by disproving the facts upon which it rests, because he would have no means of learning what acts the notary had or had not performed.

It would place it completely within the power of the no-

tary, in most cases, to transform the conditional contract of the endorser into an unconditional promise to pay the debt of acceptor or maker of the bill or note.

It would in a large majority of such cases prevent the endorser from making a successful defence in cases where, from the laches of the holders, or of some previous endorser, he has been absolutely discharged from all liability on his endorsement.

Under such a construction there can be neither *uniformity nor certainty* as to what acts constitute "due diligence as to presentment or notice." Depending as they would upon the opinion of the notary as to what facts are sufficient for that purpose,—the rule would vary according to the ignorance or intelligence, the experience or inexperience of the notary in each particular case.

A construction resulting in so much uncertainty, and liable to inflict so much injustice upon innocent parties, should not, and in our opinion can not on sound reason or principles be sustained.

In the case of *Barroux* v. *Waters*, 3 Metc. (Ky.) 304, the endorser, who was also one of the drawers of a bill of exchange, payable at the Ohio Insurance Company, New Albany, (which was in fact a bank) denied his liability on the ground, that there was no sufficient proof of presentment for payment.

The notarial protest, which was all the evidence relating to the presentment, stated that the notary did,—" after the close of bank hours present said draft to the secretary of the Ohio Insurance Company, at New Albany, payment of which by him was refused, whereupon the draft was protested for non-payment. Other evidence, however, was introduced, which clearly proved that the bill of exchange was an accommodation bill, accepted and endorsed for the benefit of said endorser, who in fact received the proceeds of the bill, and these facts were undisputed.

The endorser demurred to the evidence and there was judgment in favor of the holder.

Durall, Judge, delivering the opinion of the court, said :—
" That the demand is sufficiently proved to have been made at the *place* of payment, admits of no doubt. It is true

that the notary does not state *in terms,* that the bill was presented *at* the office of the Ohio Ins. Co, but he states that which by any reasonable and fair intendment must be regarded as equivalent. Any other inference from the facts stated in the protest would be forced and unnatural. "

This conclusion thus announced is all that the court was pleased to say on that subject. Standing as it does, almost alone, without argument or authority cited to support it, and in opposition to many well considered cases, we can not regard it as sufficient to establish as a correct general rule the conclusion announced in that case.

It would rather seem, that the court in that case, gave this particular question but little consideration ; and for this reason, that the other evidence in the demurrer clearly showed that under the circumstances of that case, the endorser was not entitled to notice of the protest of the bill, and that no presentment for payment was necessary to fix his liability as a drawer of the bill.

As an authority for the conclusion announced, this case is entitled to very little weight.

Having shown, that the burden of proof, that notice of the dishonor of the note has been given to the endorser by personal service, or that due diligence has been used to give such notice in some of the modes recognized by law merchant as equivalent to personal service rests upon the holder; we will now consider whether in the case under consideration, the evidence in the record is sufficient to show due presentment and dishonor of the note in suit, and if so, whether notice of the protest thereof was given to the endorser, Buffington, personally, or whether due diligence to give such notice has been exercised in any of the modes recognized by law as equivalent to personal service.

The only evidence in the record in regard to both of these material points is found in the notarial protest; and our statute declares, that this protest "shall be *prima facie* evidence of what is stated therein" in relation to *presentment,* dishonor and *notice* thereof," that is as we have already shown of the facts stated therein in relation to "presentment, dishonor or notice."

But it must be remembered, that this protest, as well be-

fore as since the passage of the statute, was not, and is not now, evidence of any fact not stated therein, and whatever is not so stated therein must be otherwise proved at the trial. If, therefore, it omits to state the residence of the endorser, the name of the post-office to which the notice was addressed, or any other material fact, that fact can not be inferred, and must be proved *aliunde.* (*Haliday* v. *Martinet,* 20 Johns. 168; Dan'l Nego. Inst. section 1,057.)

By the protest in this case it appears, that at the maturity of the note, the notary, at the request of the holder, presented the original note to the cashier of the Exchange Bank of Wheeling, and demanded payment thereof, and the note was not paid, and he thereupon protested it in the usual form, and then the notary stated : " Of which protest I duly notified the endorser and drawer by delivering and mailing notices of this protest to their several addresses."

It does not appear *where* the cashier of said bank was when the note was presented to him for payment; nor that the note was ever at the bank or in the bank at any time, so that it might have been delivered up if the makers had desired to pay the same; nor that the *cashier at the time* when the note was presented to him for payment was at the bank.

It does not appear upon whom, if upon any of the parties, personal service of notice was made ; neither does it pretend to say, where the endorser, Buffington, resided, or what was the name of his post-office, or of the post-office nearest his residence, or the post-office at which he was accustomed to receive his mail matter ; nor to what post-office the notice to Buffington was addressed.

In regard to all these essential facts the protest is silent and, whether the notice to Buffington was by personal service or by the use of due diligence in any of the modes recognized by the law as equivalent to personal service, is a matter of mere conjecture.

We have already shown, that a presentment for payment to the *cashier* of the bank is insufficient to fix the liability upon the endorser, unless such presentment was made to him at the bank. No such fact appears in the protest, nor

could a jury fairly infer any such fact from any other fact stated therein.

The omission of this material fact, as well as the residence of the endorser, the name of his post-office, or of the post-office nearest his residence, or the one at which he usually received his mail matter, and of the post-office to which the notice to Buffington was addressed, might have been supplied by the plaintiff by other evidence at the trial.

When the notary in the protest attempts to supply these omissions by the general statement, that "he notified the endorsers and drawer by delivering and mailing notices of this protest to their several addresses," he merely gives his conclusion of law, and not the facts, from which the court alone is authorized to draw this conclusion.

But it is claimed by the defendant in error, that upon the demurrer to evidence, the court is authorized to infer and ought to infer, from the facts stated in the protest, the further facts, that where the note was presented to the cashier, he was in fact *at the bank*, and that the notice sent the endorsers by mail, " directed to their several addresses " were in fact sent to their residences,— or if not, that due diligence in some of the modes recognized by law had been exercised, which was equivalent to personal service ; and it is insisted that these inferences may be drawn by the court, because it assumes that a jury might properly have drawn such inferences.

We are not unmindful of the well established rule in relation to a demurrer to evidence, that the " demurrant admits the credit and truth of all the evidence adduced by the demurree, and all inferences of fact that may be fairly deduced from it, " but only such as may fairly be inferred from it.

We have not been able to find any case where the protest or other evidence failed to show the residence or post-office of the endorser, or at least the post-office to which the notice was directed, that had been sustained.

In this case the Court is invited to take a long stride in advance of all the adjudicated cases, and to hold without further proof than the notarial certificate of protest, not only, that the place to which the notice was directed is suf-

ficient evidence of the endorser's residence or place of business or post-office, or the post-office nearest his residence or the post-office at which he usually receives his mail matter, but also where none of these places are stated, to accept the statement of the notary as *prima facie* evidence of these facts, when he is content to say only that he "notified the endorser by mailing notices of the protest to their several addresses."

Such inferences can not be fairly drawn by a jury or by the court on demurrer on a demurrer to evidence.

The burden was on the plaintiff to show, that due presentment for payment was made, and due notice of dishonor and protest given to the endorser, or due diligence used to give such notice; and clear proof of these facts were conditions precedent to his right to recover against the endorser.

The plaintiff failed to prove either presentment or dishonor of the note, as well as notice thereof to the endorser, Buffington; and that judgment upon the demurrer to evidence, should have been rendered in favor of the plaintiff against the makers, but in favor of said endorser against the plaintiff.

For these reasons, the judgment of the Circuit Court must be reversed with costs to the plaintiff in error, and this Court now proceeded to enter such judgment as the Circuit Court should have entered, it is considered the verdict of the jury, and the demurrer to evidence be and the same are hereby set aside and a new trial awarded, the costs of the former trial to abide the result of the suit.

REVERSED.  REMANDED.