The Louisville, New Albany and Chicago Railway Co. *v.* Graham, Adm'r.

No. 14,225.

## THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY *v.* GRAHAM, ADMINISTRATOR.

MASTER AND SERVANT.—*Railroad.*—*Action against for Wrongfully Causing Death of Employee.*—*Complaint.*—*Sufficiency.*—A complaint by an administrator in an action against a railroad company for negligently causing the death of his decedent while he was engaged in repairing a tunnel on the line of the road, alleged the insufficiency of the braces of the tunnel, and its dangerous condition, and that it had long remained in such condition, the defendant knowingly allowing it to become and remain so; that the defendant, well knowing the dangerous condition of the tunnel, and that its condition was not visible by ordinary observation, ordered the deceased, who was free from fault, without warning him of the character or condition of the supports, braces or walls, or of the danger, to work at the place where he was injured and killed, and exposed him to the perils and hazards of falling timbers, stones and dirt; that the deceased was wholly without fault, and wholly ignorant of the condition or character of the tunnel, rocks, dirt and supports.

*Held*, that the complaint was not subject to the objection that it appeared therefrom that the deceased assumed the risk of the necessarily hazardous work, nor to the objection that it did not show that the danger could not have been known to the deceased by the use of ordinary diligence and care.

SAME.—*Special Verdict.*—*Judgment for Plaintiff.*—The jury in their special verdict found facts sufficient to show that the railroad company did not provide a safe place for the deceased to work; that the foreman, entrusted with the superintendency of the work, and acting for the master, had full knowledge of the dangerous character of the tunnel and the liability of the rock to fall and kill the deceased; that he might, with reasonable diligence, have guarded against the danger; that the death of the deceased was caused by the foreman's negligence, and that the deceased was without fault, and had no knowledge of the dangerous condition of the tunnel, or the crack in the rock, or its liability to fall and injure him.

*Held*, that the plaintiff was entitled to judgment.

SAME.—*Respondeat Superior.*—An employer must use ordinary care and reasonable skill to make safe the place where he requires his employees to work. This duty the employer can not delegate, and he can not escape responsibility by delegating the duty of looking after and providing a safe place to any other person. If the employer delegates such duty to another, such person acts for the employer, and if such duty is negligently performed the employer is responsible.

The Louisville, New Albany and Chicago Railway Co. *v.* Graham, Adm'r.

SAME.—*Foreman in Charge of Work.*—*Fellow-Servants.*—A foreman entrusted with exclusive control of work, and of providing a safe place for employees to work, acts in the discharge of such duty for the master, and is not a fellow-servant of one injured through his negligence in failing to provide a safe place for him to work, and the railroad company is liable.

From the Lawrence Circuit Court.

*G. W. Friedley, J. Giles, E. C. Field* and *C. C. Matson,* for appellant.

*M. F. Dunn* and *G. G. Dunn,* for appellee.

OLDS, J.—This was an action brought by the appellee against the appellant for negligently causing the death of appellee's decedent. The death of Miller occurred while he was repairing a tunnel on appellant's line of railroad in Greene county, Indiana, caused by the falling of stone and dirt, and the giving way of the timbers.

There was a trial by a jury, and a special verdict returned, and judgment rendered on the special verdict in favor of the appellee.

Numerous errors are assigned, but the only ones discussed are the overruling of appellant's demurrer to the first and second paragraphs of complaint, upon which paragraphs the trial was had, and the ruling of the court in overruling the appellant's motion for judgment on the special verdict.

It is contended that each paragraph of the complaint is bad, for the reason that it clearly appears from each of them that the work in which the deceased was engaged was necessarily hazardous, and that the deceased assumed the risk resulting from falling stone and dirt, and that at least the complaint does not show that the danger could not have been known to the deceased by the use of ordinary diligence on his part.

The complaint is not subject to the objections urged to it. It alleges the insufficiency of the braces and the dangerous condition of the tunnel, and that it had long remained in such condition, and that the appellant knowingly allowed

it to become and remain in such condition ; that the defendant well knew the dangerous condition of the tunnel, and that its condition was not visible by ordinary observation ; that the appellant, without any fault whatever on the part of the deceased, and without any warning to him of the character or condition of the supports, braces or walls, or of the danger at said point, ordered deceased to work at the place where he was injured and killed, and exposed him to the perils and hazards of falling timbers, stones and dirt ; that said deceased at the time was wholly free from fault on his part, and wholly ignorant of the condition or character of said tunnel, rocks, dirt and support at said point and at said time.

The allegations of the complaint, and each paragraph thereof, are clearly sufficient to avoid the objections urged against them.

The jury, in their special verdict, found the following facts :

" That the defendant (the appellant) was a duly organized corporation operating the road, etc. ; that the said Alonzo Miller died by reason of the injuries received in the tunnel ; that he left surviving him as his sole heirs his wife, who had born to her a child, the issue of said marriage, the day following the burial of the deceased.

" That the said tunnel, on the line of defendant's road, in July, 1886, was badly out of repair by reason of the supports, which were of wood 10 by 12 inches square, and caps of the same size, breaking down and falling in, together with the dirt and stones above and about them at the east end of said tunnel ; that the defendant corporation left the management and control of the repairs thus going on in said tunnel to one George Richards, a boss and foreman ; that said George Richards, foreman, on the day of the killing of Alonzo Miller, and prior to that time, and during the month of July, 1886, was in the employ of the defendant, and as defendant's foreman, superintending the repairs and work going on

in said tunnel, ordering, directing and giving instructions to the men therein employed and at work, and at the time of the killing of said Miller the said Richards, foreman, was the sole and only agent of the defendant in said tunnel exercising authority or having power over said Miller and said men ; that said Richards had employed said Miller, deceased, and said men, for the defendant; that when said men were paid Richards paid them for the defendant as defendant's agent and foreman, and that when men were discharged Richards was the man who discharged them ; that said Richards was knowingly permitted by the defendant to exercise full authority at said time over said men ; that he had power to employ, oversee and discharge men.

"That said Richards had been engaged on said road and in and about said tunnel for about nine years, and had charge, for several years prior to the killing of said Miller, of the bents, timbers, uprights and supports in said tunnel, and was thoroughly familiar therewith, and was fully advised of the dangerous character of said supports and of the sides and walls of said tunnel at, near and about the point where the said Miller was killed.

" That said Miller was employed as a common day laborer in the year 1886 by said Richards, defendant's foreman, to work in and out of said tunnel ; that on the day of said Miller's death he was at work on the outside of said tunnel, at the west end thereof, shovelling dirt, together with other men employed by said Richards; that while so at work said Richards ordered him into the tunnel to work to help the bridge men ; that at said time said Richards had the superintendency of two gangs of men as foreman, one a gang of bridge men or carpenters, and the other common laborers, to which last said Miller belonged, but was frequently called upon and required by said Richards to help the bridge carpenters.

" That upon the day of his death, by the order of Richards, Miller went into the tunnel about 135 feet from the east

end thereof, and assisted the carpenters in raising a bent; that said bent was raised and put up under the supervision and direction of said Richards, foreman, for defendant, and said Richards was the only foreman, engineer, master mechanic or road master of the defendant in or about said tunnel; that at said point the old bents in said tunnel were of oak timber, 10 by 12 inches square, and the caps were of the same size, and the new bents were 12 by 12 inches square, and the caps 12 by 14 inches square; that said Richards at the time knew that the old bents were too light, and insufficient for the purpose, and for that reason the same was being repaired and new timbers being put in at that time at that place; that at that point it was so dark that many of the employees were using miners' lamps.

"That about six feet west of the new bent which Miller assisted to put in, there was the post, the upright piece supporting an old bent, and prior to said day there had been attached timbers, called bagging, with dirt behind them, which served to support and brace the walls and stone in the rear behind the post; that on the morning of the day of the death of Miller, by order of Richards, bagging was removed, leaving the walls and sides of the tunnel at that point unsupported and unbraced.

"That between the said post or upright piece of the old bent and the new bent, near where the bagging had been removed, and on the same side of the tunnel, by order of Richards, a hole, called a hitch, was being dug for the purpose of setting another bent next west of the other new one which Miller helped to raise, and was about three or four feet west of the old one referred to; the digging of said hitch had been commenced by other workmen, members of the carpenters' gang, and then said Miller was ordered to complete the digging of the same, and while at work digging the same, he was struck by a piece or pieces of falling timbers and pinned down on and against a car and standard of a car belonging to the defendant, then at said point on

the track in the tunnel, and was thereby crushed, bruised and wounded, from which bruises and wounds he, within a few hours afterwards, died.

" That at the time of said accident, said Miller was at work down in the ditch with a spade and shovel, furnished him by said Richards, and said Miller was doing the work assigned to him in a proper and skilful manner, and did nothing to bring about the accident, or cause the timber or rocks to fall.

" That the timber that struck said Miller was caused to fall by reason of a rock in the wall of said tunnel which extended from a new bent erected that day, under the orders and supervision of Richards, near an old bent which had been standing seven or eight years; that the new bent was insufficiently braced, and the timber in the old was insufficient in size and strength, as Richards well knew; that the upright piece was brash and insufficiently braced; that Miller was at work between the old and new bent, the supports thereof, with the knowledge of and under the directions of Richards, and while so at work, by reason of a crack in the wall on the north side of said tunnel, about eight feet west and six feet above a point where said Miller was at work in said tunnel, the said Miller was injured and killed, said crack in the rock causing said rock to fall down over and against the timbers in said tunnel and the supports thereof, and throwing the same over and against said Miller and killing him.

" That said tunnel was about eleven feet broad and fifteen feet high; there were a locomotive and cars in the tunnel, and it was dark, and said crack in said rock could not be seen by a person, or by Miller, from the point where he was at work; that said Richards' attention had been called to said crack in the rock, and he knew of it the day before the injury to said Miller, and said Richards examined said crack the day before the accident; that said Richards probed the crack and traced it to a depth of two and a half inches, and

found that it turned, and took a hammer weighing about three pounds and struck on said rock, but after probing the crack and ascertaining that it turned he made no further investigation of it; that he did not test said rock with a rock crowbar or other implement; that by close examination Richards might have had full knowledge of the character of said crack and the danger thereof; that on the morning before the accident resulting in Miller's death Richards again climbed up and saw said crack, but he made no test that morning to discover the true character and danger of said crack other than he had the evening before; that with full knowledge of the existence of said crack he ordered Miller to work at the place where he was killed, without giving Miller any notice of the existence of such crack, or that he had examined it; that said rock which fell was of three or four tons weight.

" That said Richards took no steps after the discovery of said crack to test the depth of the crack or strength of the rock, and used no precaution, which he might have done, to loosen or to prevent the falling down of said stone, or to brace or in any way prevent said stone from falling, or said crack from opening; that after he discovered the crack he removed some of the bagging, dirt and support in front of the stone and near and beneath the crack; that said bagging and dirt had been placed there as a brace to the wall; that after said crack was discovered by Richards the stone might have been taken down.

" That said Miller had no knowledge of the existence of said crack in said rock, or of the fact that he was in peril; that Richards, with a full knowledge of the liability of said rock to fall down and upon said Miller by reason of said crack, put him at work at that point."

It is further stated in the finding that said Richards had knowledge of the dangerous condition of said rock the day before the accident; that he might have taken the rock down and prevented the injury, but instead of doing so he negli-

gently and carelessly put Miller at work where it might fall and injure him, and where it did fall and cause the death of Miller; that at the time Richards ordered the said Miller to work at the point where he was killed, he knew that the rock was cracked and liable to fall and kill him, and the rock did fall and kill him, and that the said Richards, knowing the condition of said rock, negligently and carelessly ordered and required him to work at said point, and said Miller was without fault.

The special verdict contains much irrelevant matter, conclusions, and even statements of evidence, also recapitulates, and is unnecessarily long, but it contains sufficient facts to show that the defendant did not provide a safe place for the deceased to work; that the foreman, entrusted with the superintendency of the work, and acting for the master, had full knowledge of the dangerous character of the tunnel, and the liability of the rock to fall and kill the deceased; that he might, with reasonable diligence, have guarded against the danger; that the death of Miller was caused by his negligence, and that Miller was without fault, and had no knowledge of the dangerous condition of the tunnel, or the crack in the rock, or its liability to fall and injure him.

It is the settled law of this State that an employer must use ordinary care and reasonable skill to make safe the place where he requires his employees to work, and that this is a duty which rests upon the employer, and which he can not delegate, and the employer can not escape this responsibility by delegating the duty of looking after and providing a safe place to any other person. If the employer delegates such duty to another, such person acts for the employer, and if such duty is negligently performed the employer is responsible.

In this case the foreman, Richards, had exclusive control of the work and of providing a safe place for the employees to work, and in the discharge of this duty he acted for the master, and was not a fellow-servant of the deceased, and

the defendant is liable for his negligence in failing to provide a safe place for Miller to work. The facts found clearly show negligence on the part of Richards in providing a safe place for Miller to work, and that Miller's death was the result of such negligence, and that Miller had no knowledge of the unsafe condition of the tunnel, or of the peril he was in at the point where he was ordered to work and was at work, and that he was without fault. *Brazil Block Coal Co.* v. *Young,* 117 Ind. 520.

In the case of *Pennsylvania Co.* v. *Whitcomb,* 111 Ind. 212, the court say : " It is undoubtedly the duty of the employer to provide the employee with a safe working place and with safe machinery and appliances." Again the court say : " This duty is one which the law enjoins upon the master, and it is one which can not be so delegated as to relieve him from responsibility. The agent to whom it is entrusted, whatever his rank may be, acts as the master in discharging it. He is in the master's place." *Krueger* v. *Louisville, etc., R. W. Co.,* 111 Ind. 51; *Wright Fire-Proofing Co.* v. *Poczekai,* 22 N.E.Rep.543.

The appellee was entitled to judgment on the special verdict, and there was no error in overruling appellant's motion for judgment in its favor on the special verdict.

Judgment affirmed, with costs.

Filed May 27, 1890.