# CHARLESTON.

A. W. LAAS, *Admr., etc. v.* FRANK LUBIC, *Doing business, etc.*

(No. 5607)

Submitted April 27, 1926.    Decided May 4, 1926.

1. MASTER AND SERVANT—*Employer Who Does Not Take Advantage of Workmen's Compensation Act (Code, c. 15P, §§ 1-55) is Not Liable for Injuries to Employee in Absence of Negligence.*

    An employer whose business comes within the purview of the Workmen's Compensation Act, and who does not take advantage of the immunity, is not liable for an injury sustained by an employee in the course of his employment in the absence of negligence on the part of the former which is the proximate cause of the injury. (p. 548.)

    (Master and Servant, 39 C. J. § 559; Workmen's Compensation Acts, C. J. § 157.)

2. APPEAL AND ERROR—*Where, in Case Submitted to Court on Demurrer to Plaintiff's Evidence, it Appears That Evidence on Issue on Which Recovery Depends Was Omitted, if Interest of Justice Will Thereby be Subserved, Court Will Reverse Judgment and Award New Trial.*

    Where, in a case submitted to the court on a demurrer to plaintiff's evidence, it appears that there has been an omission to adduce all evidence on the issue upon which the right of recovery depends, and, if the interest of justice will thereby

be subserved, this Court will afford an opportunity to a
proper development of the merits of the case, by reversing
the judgment below, and awarding a new trial.   (p. 551.)

(Appeal and Error, 4 C. J. § 3239.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not
part of syllabi.)

Error to Circuit Court, Ohio County.

Action by A. W. Laas, administrator of Stanley Marisnik,
deceased, against Frank Lubic, doing business, etc., for the
death of the deceased.  Judgment for plaintiff, and defendant
brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*John P. Arbenz* and *A. E. Bryant,* for plaintiff in error.
*Schmidt, Hugus & Laas,* for defendant in error.


WOODS, JUDGE:

This is an action of trespass on the case brought by an ad-
ministrator for the wrongful death of his intestate while em-
ployed in the defendant's coal mine.  After the plaintiff put
in his evidence the defendant demurred to it, in which de-
murrer the plaintiff joined, and the jury rendered a condi-
tional verdict in favor of the plaintiff.  From a judgment
entered thereon in favor of the plaintiff, the defendant sued
out this writ of error.

On March 10th, 1922, Stanley Marisnik, a miner, was en-
gaged in mining coal in a small mine (of which the defend-
ant was sole owner and operator) known as the "Dimmy
Mine", in Ohio county, in which mine, at that time, four or
five other miners were employed.  About 2 o'clock on that
afternoon, witness Turner, another miner, then working in
a room adjoining the one being worked by Marisnik, called
upon the latter in the room where he was working and at his
request helped him remove a loose stone from the roof of said
room, and this witness then said to Marisnik, "watch the
stone", and thereupon left the room.  About 3 o'clock, or
just about one hour after the loose stone aforesaid had been
removed, Marisnik was found dead in the room where he had
been working.  He was lying on his back near the face of the

coal in the left-hand corner of the room, with a large stone across his chest.

The declaration averred the negligent acts of the defendant causing such death to be a failure to provide said coal mine and the roof thereof with sufficient props and stays to keep the stone, slate, etc., that hung loosely in and above the roof thereof from falling; the employment of incompetent and inexperienced agents to manage, control and operate said mine; and in permitting large stones, slate, etc., to hang loosely in the roof, the falling of which crushed the decedent.

There is nothing in the evidence tending to support the first allegation of negligence in the declaration as to the failure to supply props and stays.

It developed in the evidence that while the defendant had his mine registered under the Workmen's Compensation Act, he was not in good standing at the time of the accident, having been suspended because of failure to file the reports required by said act. An employer whose business comes within the purview of the Workmen's Compensation Act, and who does not take advantage of the immunity, is not liable for an injury sustained by an employee in the course of his employment in the absence of negligence on the' part of the former which is the proximate cause of the injury. *Wilkins Admr.* v. *H. Koppers Co.,* 84 W. Va. 460; *Miller* v. *Gas Company,* 88 W. Va. 82; *Zinn* v. *Cabot,* 88 W. Va. 118. Upon the inquiry thus raised, references to the familiar doctrines of the assumption of risk, contributory negligence and negligence' of fellow servants, are excluded. *Louis* v. *Construction Co.,* 80 W. Va. 159. However, since the passage of that act, one who does not take advantage of it is not liable in damages for every injury sustained by his employee. Unless some negligence is traced to the employer there is no cause of action. As Judge RITZ said, in *Zinn* v. *Cabot, supra*: "This negligence may be some' defect in the working place, or may be some improper method of doing the work by some of the injured employee's fellow servants, but, unless there is some failure upon the part of the employer to do something which he should do for the employee's safety, or the commission of

some act by him or his servants which results in the injury, there can be no recovery."

On the hearing before this Court, plaintiff's counsel insisted that the mine fell within the class required under Chap. 15H, § 36d. (1), Code, to employ a foreman, while counsel for defendant argued to the contrary. There is no allegation in the declaration that the mine came within the class required to employ, nor that the alleged wrongful death resulted from the failure to employ, such foreman. Liability for decedent's death, as averred in the declaration, rests solely upon the breach of the common law duty requiring the master to provide a reasonably safe place in which to work, without the benefit of the usual common law defenses by reason of failing to comply with the Workmen's Compensation Act. It proceeds on the theory that the mine does not come within the class aforesaid. Thus, the employment or non-employment of such foreman is immaterial to the issue here. However, the defendant is not absolved from his common law duty to exercise reasonable care and to provide reasonably safe machinery, tools and appliances for use in the mine, and to make the mine a reasonably safe place for work. *Humphreys* v. *Raleigh Coal & Coke Co.,* 73 W. Va. 495; *Cheeks* v. *Coal Co.,* 74 W. Va. 553; *Crockett* v. *Coal Co.,* 75 W. Va. 325; *Flannegan* v. *C. & O. Ry. Co.,* 40 W. Va. 436; *Northern Pacific Ry. Co.* v. *Peterson,* 162 U. S. 346; *McElligott, Admrx.* v. *Randolph,* 61 Conn. 157; *Canp* v. *Hall,* 39 Fla. 535; *Fink* v. *Des Moines Ice Co.,* 84 Ia. 321; *Grant* v. *Varney,* 21 Colo. 329; *Elledge* v. *Railway Co.,* 100 Cal. 282; *Louisville R. R. Co.* v. *Graham,* 124 Ind. 89; *Pantzar* v. *Mining Co.,* 99 N. Y. 368; *N. & W. Ry. Co.* v. *Houchins,* 95 Va. 398. The master's duties to employees to provide this safe place for them in which to work is a continuing one, and requires him to use ordinary care to keep them safe, and, if they become unsafe through his neglect, he must answer in damages to his servant who was injured thereby. *Nall* v. *Louisville Ry. Co.,* 129 Ind. 260; *Beard* v. *Ry. Co.,* 90 Va. 355.

Workmen in a mine have a right to look to the master for a discharge of his duty to make it a reasonably safe place for

work, and to this end a reasonable inspection be made thereof by the master; and a failure to perform this duty is negligence. *Green* v. *Western Am. Co.,* 30 Wash. 87; *Western Stone Co.* v. *Muscial,* 196 Ill. 382; *Bunker Hill Mining Co.* v. *Jones,* 130 Fed. 813. Generally speaking, the making safe of the miner's working place, may be divided into three duties: (1) The duty of examining the roof and of determining when protection must be provided against possible falling of the roof, and whether ordinary props will be sufficient protection, or whether timbering is necessary; (2) the duty of placing the props in position; (3) the duty of timbering the place when ordinary props have been deemed insufficient protection. *Eagle Coal Co.* v. *Patrick,* 161 Ky. 333. Under the pleadings and the proofs in this case our consideration is only drawn to the first duty under the foregoing classification.

It appears in the evidence that a mine foreman was not employed in this mine. However, the duty still remained on the defendant to see that the place was in proper condition and so remained. Whatever inspection was made was made by the defendant, who according to the witness Turner "would come around sometimes, but not always." This witness, who worked in an adjoining room to that worked by the intestate, says that, to his knowledge, no inspection of any part of the mine was made by anyone on the day that decedent met his death. The defendant did not testify. That an inspection was made is a fact peculiarly in the power of the defendant to show. In the instant case there is positive evidence that there was a loose stone in the roof of the decedent's room less than an hour prior to the time he was found dead, and that witness Turner assisted him in removing it. That stone, according to Turner, was hanging in the center of the room, and being so located it may reasonably be inferred that it was there when intestate went to work in the morning. It is likewise a fair inference that it could have been observed upon a reasonable inspection thereof by the master. Is the death of the servant here traceable to this negligence of the master.

The record shows here that the happening of the accident was not witnessed by anyone; hence there could be no direct or positive testimony as to the actual manner of its occurrence. It does not follow, however, that there is no rational basis for an inference as to the manner in which the decedent met his death. If it appears that there is evidence from which the act necessary to be shown may have been inferred by the jury, it is sufficient.

The witness who helped the decedent to remove the piece of slate from the roof previous to his death, on being summoned to go into intestate's room less than an hour later, said that there was a piece of stone weighing possibly three hundred fifty or maybe three hundred pounds lying across decedent's breast—between his stomach and chest; that decedent was lying on his back in the left-hand corner of the room; and that he did not know whether the stone came from the face of the coal or from the roof. This is the whole of the evidence on the crucial question involved. The declaration avers that it fell from the roof of the mine, by reason of it having negligently been permitted to hang loosely in and about said roof. Taken in connection with the recent presence in the roof of the other loose stone in evidence, it is maintained by the plaintiff that it might be reasonably inferred that the stone found lying across the body of the intestate fell from the roof thereafter, either of its own accord or in an attempt of the miner to take it down. But, on the other hand, the defendant as strenuously contends that the stone came from the face of the coal, or from the roof recently theretofore uncovered by decedent as an incident to his service, as evidenced by the posture of the intestate, at the time his body was found, and the position of the stone with reference to said body. Thus it will be seen that the place from which the stone fell became an issue vital to the decision of the case. Whether from the part of the roof, which would make the defendant liable under the charge in the declaration, would depend upon the position of the dead body when first discovered in respect to its location in the room and the walls thereof, the size of the room, and of any other evidence from whence the stone

came. There seems to have been no attempt to supply such evidence, although it does appear by the only witness examined on this point, that another miner first discovered that Marisnik was killed and was with the former at the time Marisnik's body was taken out of the mine. He was not called. Thus the evidence on the controlling question involved is far from being satisfactory. All the evidence obtainable does not appear to be before the court. In *Cook* v. *Lumber Co.*, 74 W. Va. at p. 507, Judge POFFENBARGER said: ''If the real merits of the case are not developed by the evidence demurred to so as to enable the court to embody in its judgment the legal rights of the parties, there is, at least, discretionary power to award a new trial. *Gibson & Johnson* v. *Hunter*, 2 H. Bl. 187; *Gazzam* v. *Bank*, 1 Ala. 268; *Duerhagen* v. *Insurance Co.*, 2 S. & R., 185. * * * A joinder in a demurrer to evidence will be set aside upon the disclosure of the inadvertent omission to prove a vital fact. *Insurance Co.* v. *Wilson et al.*, 29 W. Va. 528.'' In the *Cook* case, in which the demurrer to the evidence had been overruled, as here, the plaintiff, who had been given judgment upon the demurrer, though in default, was afforded an opportunity to supply the evidence necessary to sustain his case. The judgment was reversed and a new trial awarded, in furtherance of justice. In line with the doctrine enunciated there, we are of opinion to reverse the judgment of the circuit court, set aside the verdict and the demurrer and joinder therein, and to afford the plaintiff an opportunity to supply the evidence necessary to sustain his case, if he can do so, by awarding a new trial. And to this end the case is remanded.

*Judgment reversed; verdict set aside; new trial awarded.*