# CHARLESTON.

A. W. LAAS *v*. FRANK LUBIC, *Doing business as the Auto Coal Company*

(No. 6172)

Submitted April 25, 1928.     Decided May 1, 1928.

MASTER AND SERVANT—*Employer Not Under Act Cannot Set up Fellow Servant Rule, Assumption of Risk, and Contributory Negligence, in Action by Injured Employee; although Employer is Not Within Act, Employee, to Recover for Injury, Must Show by Preponderance of Evidence That Injury Resulted From Negligence Imputable to Employer; in Action for Death of Miner, Evidence of Employer's Negligence in Permitting Piece of Slate Which Fell and Caused*

*Employee's Death to Hang Loosely to Roof of Mine Held Insufficient for Jury (Workmen's Compensation Act).*

Although an employer in this state who has not availed himself of the protection of the Workmen's Compensation Act cannot interpose the common law defenses of the fellow-servant rule, assumption of risk and contributory negligence in a suit by an injured employee for injuries received in the course of his employment, yet before such employee can recover, he must show by a preponderance of the evidence that his injuries resulted from some negligence imputable to the employer. A case where such negligence has not been shown by the evidence or cannot be inferred therefrom.

(Master and Servant, 39 C. J. §§ 1209, 1336; Workmen's Compensation Acts, §§ 158, 159, 160.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Ohio County.

Action by A. W. Laas against Frank Lubic, doing business as the Auto Coal Company. Judgment for plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial.*

*John P. Arbenz* and *A. E. Bryant,* for plaintiff in error.
*Schmidt, Hugus & Laas,* for defendant in error.

LIVELY, JUDGE:

This was an action of trespass on the case by the plaintiff, Administrator of Stanley Marisnik, deceased, to recover for the wrongful death of his decedent while employed in defendant's coal mine. A verdict was returned in favor of the plaintiff for $7,600.00 and judgment was entered thereon. This writ followed.

On March 10, 1922, about three o'clock in the afternoon, Stanley Marisnik, who had been engaged in loading coal in a small mine operated by the defendant in Ohio county, was found dead in the room in which he had been working alone. When found, the deceased was lying on his back, with his feet about eighteen inches from the face of the coal, near the left rib thereof, with a stone weighing about three hundred

pounds upon his chest. George Lubic, an employee of the defendant, discovered the accident not long after it occurred, and with the aid of George Turner, who was engaged in loading coal in an adjoining room, removed the stone from the body of the deceased and conveyed the remains to the outside of the mine.

This case involves the same controversy as that in *Laas v. Lubic*, 101 W. Va. 546, which was reversed and a new trial awarded for the purpose of giving the plaintiff an opportunity to more fully develop the facts, which were in that trial too meagre to enable the Court to fully determine the legal rights of the parties, under the principles announced in *Cook v. Lumber Company*, 74 W. Va. 503. The pleadings in the two cases are similar and reference is made to the former opinion for a statement thereof. The effect of defendant's failure to subscribe to the Workmen's Compensation Fund was fully discussed in that decision and will not be repeated here.

On the first trial the defendant relied entirely upon his demurrer to the plaintiff's evidence. When the instant case was tried, he offered the testimony of George Lubic, A. E. Lafferty, State Mine Inspector, and that of the defendant himself. The plaintiff, as in the first trial, depended solely upon the evidence of George Turner.

The controlling question presented is whether the evidence sustains the averment in the declaration that the piece of slate which caused the decedent's death fell from the roof of the mine by reason of it having been negligently permitted to hang loosely in and about the roof thereof. It is the contention of counsel for the plaintiff that the evidence shows that the defendant did not make a proper inspection to discover the condition of the roof of the room in which the deceased was loading coal, and that the failure to perform this duty was the proximate cause of Marisnik's death.

The defendant, Frank Lubic, testified that he was acting as foreman and superintendent of the small mine in which Marisnik was employed, and that it was his custom to make a daily inspection of the mine workings. The witness testified that on the day of the fatal accident he had inspected

Marisnik's room, prior to the arrival of the miners for work that morning, and had found the roof well propped; that Marisnik had a "fresh cut"; and that all the draw slate had been removed up to the face of the coal. There is no evidence tending to controvert this inspection, except George Turner's testimony, merely negative in character, that he had never observed any inspection of the mine during the year or more that he had been employed there.

But even if it should be granted that the defendant had failed to make a proper inspection of the room in which Marisnik met his death, to permit a recovery on the part of the plaintiff, it must further be shown that this negligent act was the proximate cause of the decedent's death. Turner, the sole witness for the plaintiff, testified that about two o'clock in the afternoon of the fatal accident he had visited Marisnik's room, and at the latter's request had aided him in removing a piece of slate which was projecting out over the coal which the deceased had that day mined on the right side of the centerline of the room. The witness further stated that he had returned to his work, and that about an hour later, upon the summons of George Lubic, he re-entered Marisnik's room where he found the deceased "lying at an angle" upon his back, with a heavy stone upon his chest, three or four feet from the left rib of the coal, with his feet toward the face of the coal and about eighteen inches therefrom. Turner was unable to say how far the stone was found from the face of the coal, nor could he state from where the stone had come. The witness testified that the room when last seen by him at two o'clock that afternoon was well posted, and that the draw slate had been removed up to the face of the coal. According to Turner, the room was about eighteen feet wide and sixty feet in length. Lafferty, a State Mine Inspector, made a rough drawing of the room as he found it three days after the accident, and it is reproduced here for whatever value it may have. The witness Turner was examined with reference to other sketches, which are not found in the record, and his statement was that the coal shot down had been removed from the right side of the room up to about the center of the width,

and that the body of the deceased was found near the left
rib, about eighteen inches from the face of the coal, where
he had been loading, his shovel lying nearby between the
body and the left rib. So the drawing here reproduced
may not be an exact representation of conditions existing at
the time of the accident; the discrepancy between Turner's
testimony and the drawing may have arisen from the sketches
by which Turner was examined. However, the mine inspec-
tor's drawing will serve to visualize the room.

(See accompanying map.)

The plaintiff basis his right to recover upon the evidence
of Turner, just detailed, and upon the further facts that the
deceased was a man about five feet eight inches tall, and that
the coal was four feet eight inches high with a layer of slate
twelve inches thereon, and argues that it would have been im-
possible for the three hundred pound slate or soapstone to
have fallen from the face of the coal and propelled itself six
feet, carrying Marisnik with it. It is contended that if the
slate came directly from above the face of the coal, it would
have landed not more than a foot or two away. And there-
fore, in view of this undisputed evidence, the stone which
caused the decedent's death must have fallen from the roof
above him. In answer to this the defendant points out that
there is no evidence showing the exact position of Marisnik's
body with reference to the face of the coal, nor the distance
the stone was found therefrom. Defendant argues that it
would be more reasonable to say that the stone must have
come from the working face and forced the decedent back-
wards; and reliance is placed upon the evidence of the de-
fendant that the stone in question came from above the work-
ing face as indicated by a space therein corresponding to
the shape of the fatal stone.

The evidence shows that the night before the fatal accident,
the coal had been under-cut to a depth of about five feet in
order that Marisnik might continue with his work on the
following day, and that the mine had been posted up to
within nine feet of the face, and the draw slate within that
space removed so that the cutting machine might be operated
with safety. It is further established by the evidence that

this nine foot space was the usual distance required for the under-cutting of additional coal, and that it was a miner's duty as he advanced the working face to place additional posts three and a half or four feet apart. The uncontradicted evidence shows that the twelve-inch piece of draw slate which fell upon the deceased was exposed by him during the course of his work that day, and that it was the duty of the miner to remove draw slate of this character as he mined the coal. The evidence of Turner was to the effect that the coal had been taken out on the right hand side of the room, and that Marisnik at the time he met his death was engaged in loading coal on the left side of the room. Just how far the working face at this point had been advanced is not clear from the evidence. Whether the draw slate came from above the face of the coal as it then existed, or whether it came from the slate which the decedent was under a duty to have removed as he advanced is purely conjectural. It came from the one place or the other, according to plaintiff's evidence. But from our view of the case it is not material to determine this question, because in either event no liability would be imposed upon the defendant. If the piece of slate came from above the working face, it is clear that there could be no liability imposed upon the defendant. And if it came from the draw slate which was exposed by the decedent as he continued his mining operations that day, (as it must have done if it did not fall from above the working face), it is equally certain that the decedent being under a duty to remove the slate as he advanced, there could be no liability imposed upon the defendant as charged in the declaration. It is not believed that the law would require a mine owner to stand beside a miner during the course of his day's work and point out to him that he had failed to remove draw slate of this thickness as he advanced. A different question would be presented if the draw slate had come from the *roof* of the mine, or even if it had not come from the *roof* but had been exposed and left hanging there before the deceased began his work that day.

The evidence from plaintiff coupled with the physical facts, without considering the evidence offered by defendant, which

in no view helps the plaintiff's case, is not sufficient to sustain the allegation of negligence in the declaration, and the peremptory instruction offered by defendant to find in its favor should have been given.

> *Judgment reversed; verdict set aside; new trial.*