# CHARLESTON.

LEE GOFF *v.* IMPERIAL ICE CREAM COMPANY

(No. 6446)

Submitted November 21, 1929.   Decided December 3, 1929.

*Russell, Hiteshew & Adams* and *Grover F. Hedges,* for plaintiff in error.

*S. P. Bell,* for defendant in error.

LIVELY, JUDGE:

The declaration contains the common counts in assumpsit, and a special count based on a writing, not dated, purporting to have been signed "Imperial I. Cr. Co., Geo. W. Strong, President" whereby, "The Imperial Ice Cream Co. does hereby agree to redeem this certificate No. 1817 of which this agreement is a part thereto at $105.00 per share in 5 years from this date." It is charged that this writing in connection with the certificate of stock No. 1817, issued by defendant company, formed a contract which defendant has failed and refused to perform. The certificate of stock No. 1817 was for forty shares of stock of defendant company of the par value of $100.00 per share. Defendant plead the general issue, and filed a plea of *non est factum* to the writing declared on. The verdict and judgment was for $4209.50; from which judgment defendant below prosecutes error.

Plaintiff's testimony is to the effect that about six years prior to the date of trial (September 25, 1928) some person whose name he did not know approached him in the McKown Hotel at Spencer in Roane county and represented himself to be an agent of defendant company and sold him 40 shares of the preferred capital stock of the company, the certificate to be issued and sent to him later, and that the writing declared on was then agreed upon and prepared, and promised by the alleged agent that he would have the president to sign and return the same with the certificate of stock as a part thereof. He thereupon drew a check payable to defendant for a portion of the par value of the stock (the amount of which he could not remember) and gave a note for the major part. Then in about 20 days he sent a check to defendant for the note and requested the stock contract be sent him. The certificate of stock was promptly sent him by mail, which certificate was introduced and bears date the 9th day of December, 1922. He then introduced the paper sued on, written on the stationery of McKown Hotel, which paper

he said was prepared at the time of the sale, and spaces left for the serial number of the certificate and for the signature of the president. The paper was received by him through the mails some days after he had received the certificate, and after he had written defendant for it. The letter in which this paper was received was written on the stationery of defendant company addressed to plaintiff and dated at Parkersburg, January 8, 1923, and reads: "In compliance with your request of the 5th instant we take pleasure in enclosing herewith the agreement referred to therein. Trusting this is entirely satisfactory to you, we are, Yours very truly, Imperial Ice Cream Company. By J. P. Wells." A short time after the five-year period mentioned in the paper had expired, plaintiff wrote President Strong asking redemption of the stock. On March 9, 1928, Strong wrote plaintiff acknowledging receipt of the latter's letter to the effect that he, plaintiff, had an agreement signed by Strong by which the 40 shares would be redeemed at the end of five years at $105.00 per share, and asked for a copy of the agreement. Strong came to Spencer to see the alleged contract and promptly denied his signature, and went away promising to investigate. A series of letters then passed between them, the purport of which was that the investigation was in progress to ascertain who had signed the paper, and who had written the letter of January 8, 1923, enclosing it. Finally, on May 22, 1928, the matter was taken up by defendant's directors, and referred to its attorneys and plaintiff advised of the action of the board and asked to give the name of his attorney so that a conference could be had between counsel representing both parties. This suit was later begun in July. It appears that sometime while defendant's investigations were in progress plaintiff found the letter of January 8th signed by defendant by "J. P. Wells" which had theretofore been mislaid and sent a copy to Strong. It also appears that a Mr. J. P. Wells was in the employment of defendant in 1923 as a bookkeeper, and was yet in its service. He was not a witness. Strong says he did not sign the alleged contract and did not know of its existence until in April, 1928, when he went to plaintiff's home at Spencer in order to see

it; that he, nor any other person, had authority to make such a contract to redeem stock; that no such contract had ever been authorized or discussed by the board of directors, and that he had been President since 1922. He said that the agents who sold the stock received 10%, and expressed his opinion, when asked for it by plaintiff's counsel, that whoever signed his name to the contract sued on, did so for the purpose of getting the selling agent's commission. Witness Randolph, the general manager-secretary and treasurer . of defendant, and who had been secretary-treasurer for ten years and had attended every directors' meeting and recorded the minutes, said there was nothing on the record concerning repurchase of stock from plaintiff; that no person was ever authorized by the stockholders or directors to execute such a. contract; that J. P. Wells was a bookkeeper in 1923, and was at Clarksburg or held some minor employment at Parkersburg, the home office, and had never been an officer of the company.

The only other evidence consisted in expert testimony as to the signature of Strong to the paper sued on. Three witnesses, Stalnaker, Keith and Rowh, officers of or connected with banks in Spencer, compared the signature of Strong on the certificate of stock with his signature on the alleged contract and expressed the opinion that the same person wrote each, but admitted that one might be a clever imitation of the other. Two witnesses, cashier Reich of the First National and cashier Fleming of the Wood County Bank said Strong had been a customer of their banks; that they knew his signature, and expressed the opinion that the signature on the alleged contract was not his signature.

At the close of the evidence, defendant moved the court for a peremptory instruction in its favor, which the court refused to give; the case then went to the jury without instructions, with the result above stated. Defendant moved to set aside the verdict because contrary to the law and evidence, but the court refused to do so and entered judgment on the verdict.

The errors relied upon for reversal are the refusal of the court to direct a verdict for defendant, and the refusal to

set aside the verdict as contrary to the law and evidence. Defendant says it clearly appears from the evidence that no person had authority to make the contract to redeem, declared upon; that it is the duty of one dealing with an agent to ascertain the extent of his agency and plaintiff made no effort to ascertain what authority Strong had in that regard. It is quite generally held that the president of a corporation has no inherent power to make contracts on its behalf. *Varney & Evans* v. *Hutchinson Lumber Co.*, 70 W. Va. 169; *Chafin* v. *Main Island Creek Coal Co.*, 85 W. Va. 464. Plaintiff could not rely upon the authority of Strong to contract, simply because he designated himself as president and was in fact president. The evidence uncontradicted is that he had no such right to contract for a redemption of preferred stock, and that the defendant corporation never had any knowledge of the existence of the paper sued on until 1928. Whether Strong signed that paper or whether some unknown person signed it, is immaterial, if no one including Strong had power or authority to do so; therefore, the points discussed in the briefs relative to the defect in the plea of *non est factum* and the conclusions which may have been reached by the jury on the evidence under that plea is of little moment.

Plaintiff recognizes the principle of law on which defendant bases error; but seeks to avoid its control of this case on the ground that, although the making of the contract to redeem was unauthorized by defendant, yet it confirmed and approved Strong's act by accepting the benefit of the contract made by him, when on May 22, 1928, at a meeting of its directors it became aware of the unauthorized part of the contract of sale of the 40 shares of preferred stock to plaintiff and then did not offer to return to plaintiff the money which it had received by virtue thereof. Reliance is had upon *Bank* v. *Mfg. Co.*, 56 W. Va. 446, and kindred cases which hold, in effect, that a corporation retaining the benefits of an unauthorized contract, after knowledge of its terms, ratifies it. It may be observed that there was no demand made for the return of that money. Plaintiff was standing on his contract for redemption of the stock at $105 per share. Defendant refused to recognize that contract, and to pay him the $105

per share; and the whole case, as developed, involves the validity and binding force of the alleged contract to redeem.

There is little dispute of controlling facts; and the legal principle to be applied is plain. Plaintiff thought he was contracting for stock and its redemption at an increased price after five years. Defendant thought it was contracting for the sale of stock with an option to it to redeem in five years at the same increased price. The minds of the parties never met. Neither party would have formed a contract on the basis upon which the other party stood. Both were misled by an unauthorized act of some unknown or unauthorized person. The act was known to plaintiff but unknown to defendant. Plaintiff cannot recover on the contract he thought he had, because that contract was never made by the defendant; nor can defendant stand upon the contract set out in the certificate of stock for plaintiff never agreed to that; his purchase was based on his agreement, made by an unauthorized person, which, on its face, formed a part of and was to be attached to the certificate. The whole matter is summed up in the statement that the minds of the parties did not meet on either of the writings. "Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms" else there is no binding contract on either. 13 C. J., p. 263, sec. 48. There can be no ratification of a contract which was never made. *Bowers Co.* v. *Products Co.*, 100 W. Va. 278. It follows that the verdict based on the purported contract of redemption of the stock at $105, with interest from the time of refusal of redemption, was not justified under the evidence and must be set aside, and the judgment entered thereon reversed.

But is plaintiff entitled to any recovery? The suit is not based alone on the special count which declares on the contract to redeem. The declaration is in assumpsit and contains the common counts "for money received by defendant for use of plaintiff" etc., and the damages are laid at $4,500.00. It clearly appears that plaintiff delivered to defendant $4,000.00 at two indefinite dates in 1922, but it does not appear that any of this money was paid back. Both counsel and court seem to have proceeded on the issue involved in the special count,

and to have disregarded the issue under the common counts. There having been no contract shown on which the minds of the parties met, but that defendant had received moneys from plaintiff for his use and benefit, an accounting for that money should be had. The case has not been developed so as to afford each party his legal rights. Where it is clear from the evidence that a party has a right to recover in a sum exceeding $100.00, but has not produced evidence sufficient to fix the amount of the recovery because he has misjudged the character of the evidence offered, or from some other adventitious circumstance, and that such evidence can be readily advanced on another trial, this Court will generally reverse the judgment of the trial court and award a new trial in order that substantial justice between the parties may be attained. Such is the principle invoked in *Indian Refining Co.* v. *Chilton,* 89 W. Va. 481; *Pauley* v. *Decker,* Idem, 486; *Cook* v. *Lumber Co.,* 74 W. Va., at page 507; *Laas* v. *Lubic,* 101 W. Va. 546.

Upon another trial the case can be fully developed under the common counts, if plaintiff desires to do so, and substantial justice obtained according to the law governing the case.

Therefore, the judgment will be reversed, the verdict set aside, and a new trial awarded.

*Reversed; verdict set aside; new trial awarded.*