MYRON G. CAMPBELL v. THE CHESPEAKE AND OHIO RAILROAD
COMPANY.

(No. 6964)

Submitted November 4, 1931.     Decided November 17, 1931.

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for
plaintiff in. error.

*Claude L. Smith,* for defendant in error.

WOODS, JUDGE:

This is an action in assumpsit against The Chesapeake and
Ohio Railway Company to recover damages because of the
freezing of a shipment of lemon juice in transit between Oak-
land, California, and St. Albans, West Virginia. At the con-
clusion of plaintiff's evidence, the defendant demurred there-
to, and the court of common pleas of Kanawha County, upon
consideration thereof, found for the plaintiff and entered
judgment on the conditional verdict for $650.00, interest and
costs.

The goods were shipped on an interstate bill of lading,
which contained the folowing conditions: ''Claims for loss,
damage, or injury to property must be made in writing to

the originating or delivering carrier or carriers issuing this bill of lading within six months after delivery of the property * * *; provided that if such loss, damage, or injury was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness of negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery." These conditions are based on a Federal statute (Act of Congress of March 4, 1915, known as the first Cummins Amendment, chapter 176, 38 Stat. at L. 1196, 1197), which provides among other things, "That it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years: Provided, however, that if the loss, damage or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery."

The courts in construing the statute have held that the purpose of the second clause quoted is to except some cases from the application of the general rule, and to provide that, as to them, no notice of claim nor filing of claim shall be required. *The Chesapeake & Ohio R. R. Co.,* v. *Thompson Manufacturing Co.,* (W. Va.) 270 U. S. 416, 70 L. Ed. 659, 46 Sup. Ct. 318; *Davis Director General, etc.* v. *Roper Lumber Co.,* 269 U. S. 158; 70 L. Ed. 209, 46 Sup. Ct. 28; *Barrett* v. *Van Pelt,* 268 U. S. 85, 69 L. Ed. 857, 40 Sup. Ct. 437. In the first mentioned case, it was held that the words "carelessness or negligence of the carrier" in the statute do not refer to the presumption of negligence which arises when goods received in good condition are in bad condition when delivered, but apply only when the injury is due to the carrier's actual negligent conduct in fact. And in *Barrett* v. *Van Pelt, supra,* Mr. Justice Butler made the observation that "Notice and filing of claim warn the carrier that there may be need to make investigations which otherwise might not appear to be necessary; and if notice of claim is given

and filing of claim is made within a reasonable time, it serves to enable the carrier to take timely action to discover and preserve the evidence on which depends a determination of the merits of the demand. As to claims for damages not due to negligence, in the absence of notice, there may be no reason for anticipating demand, or to investigate to determine the fact or extent of liability.''

The plaintiff offered proof to the effect that the goods were in good condition when shipped, and that they were frozen and worthless when received. No specific acts of negligence were attempted to be proved. So, under the decisions cited, he must show that proper notice was given. *Hubbard Grocery Co.* v. *Payne, Director General, etc.*, 94 W. Va. 273.

The issues raised on the demurrer to plaintiff's evidence are: Did the plaintiff file a claim of loss, and, if so, was it filed in time? The evidence on this phase of the case is as follows: ''Q. Mr. Campbell, did you receive the lemon juice that was sent you? Mr. Strickling: We object, if that question assumes the delivery to the carrier. Mr. Smith: All right, we can get around that. Q. Mr. Campbell, I hand you what purports to be a bill of lading of The Western Pacific Railroad Company, bearing date the 15th of December, 1928, countersigned Sunset Gold Packing Company, by G. W. Edwards, and will ask you whether or not you ever saw that before? A. Yes, it looks like the same one I turned over to the railroad company. Q. Did you have that bill of lading when you turned it over to the railroad company— was it yours? A. The Sunset Gold Packing Company sent it to me with their invoice. Q. Is that the signature of Mr. G. W. Edwards, do you know? A. Yes, sir. Q. Mr. Campbell, there was a duplicate to that particular bill of lading, was there not? A. Yes, sir. Q. What did you do with that. A. They were both turned over to the C. & O. Railway Company. Q. That was after you had filed claim for loss of goods? A. I filed the duplicate first, and then the original. The C. & O. requested the original, and that was forwarded later.''

Under the benign rule governing this Court in cases of demurrer to the evidence, it seems that we would be warranted in holding that such a proof of loss had been filed. *Duty,*

*et ux.* v. *Williamson Hudson-Essex Sales Co.,* 109 W. Va. 147; 153 S. E. 248; *Truschel* v. *The Rex Amusement Co.,* 102 W. Va. 215; 136 S. E. 30; *Dempsey* v. *Railway Co.,* 69 W. Va. 271; 71 S. E. 284 *Peabody Insurance Co.* v. *Wilson,* 29 W. Va. 528; 2 S. E. 888; *Heard* v. *Railway Co.,* 26 W. Va. 455; *Garrett* v. *Ramsey,* 26 W. Va. 345. But we are not so sure that the proof was filed in time. The declaration, not having been filed within the period required for filing said claim, cannot be looked to to supply this vital fact. In *Cook* v. *Lumber Co.,* 74 W. Va. 503, at page 507, 82 S. E. 327-328; the court said: "If the real merits of the case are not developed by the evidence demurred to so as to enable the court to embody in its judgment the legal rights of the parties, there is, at least discretionary power to award a new trial."

So, following the above rule, which was invoked in the case of *Insurance Co.* v. *Wilson,* 29 W. Va. 528, 2 S. E. 888, as well as *Laas* v. *Lubic,* 101 W. Va. 552, 103 S. E. 142; we are of opinion to reverse the judgment of the circuit court, set aside the verdict and the demurrer to the plaintiff's evidence and joinder therein, and to afford the plaintiff an opportunity to supply the evidence necessary to sustain his case, if he can do so, by awarding a new trial. And to this end, the case is remanded.

*Judgment reversed; verdict set aside; new trial awarded.*

Maxwell, Judge, (concurring):

When a plaintiff has closed his evidence, does a demurrer thereto, in which the plaintiff has joined, prevent him from supplying essential evidence inadvertently omitted? Admittedly not if he moves to set aside the joinder and to reopen the case before the court passes on the demurrer. Affirmative action on such motion is within the sound discretion of the court. But suppose the plaintiff does not perceive the deficiency in his evidence and makes no motion for leave to enlarge the same, what is his situation? Should the court summarily render judgment, or afford opportunity to the plaintiff to supply the defect? Reason and justice require the latter course, if it is reasonably apparent to the trial court that the necessary evidence exists. Such, indeed, seems to be the rule of *Ins. Co.* v. *Wilson,* 29 W. Va. 528. 2 S. E. 888,

889. Syllabus 10 thereof reads: "The whole proceeding upon a demurrer to evidence is under the control of the judge before whom the trial is had; and if, owing to a mistake or other causes, a material fact be omitted without which the merits of the case can not be decided, the demurrer should be set aside and a new trial awarded; *and this may be done on motion of either of the parties, or by the court itself, before final judgment.*" (Italics inserted.) Of course the court should not reopen the case on mere conjecture that the plaintiff may be able to strengthen his hand.

A demurrer to evidence is none too highly favored at best. Its only proper office is to test the legal right of a litigant on the facts. It is not a device for the entrapment of a litigant who, through inadvertence, has failed to develop in his evidence and essential element of his case.

It would seem to be unreasonable to require that the court must judicially know that such element can be established. In my judgment, it is sufficient if the court perceives that such evidence probably exists, or that the evidence on the vital point has been only partially developed as in the case at bar. This, as I apprehend, is the meaning of *Lass* v. *Lubic*, 101 W. Va. 546, 133 S. E. 142; where the court said: "Where, in a case submitted to the court on a demurrer to plaintiff's evidence, it appears that there has been an omission to adduce all evidence on the issue upon which the right of recovery depends, and, if the interest of justice will thereby be subserved, this Court will afford an opportunity to a proper development of the merits of the case, by reversing the judgment below, and awarding a new trial." And though the cases on which that case is predicated may have been more restricted, the later rule is sound in principle, in my opinion, and, within strict limitations, should remain the rule of the commonwealth. (Whether I would have applied the rule on the facts of *Laas* v. *Lubic* need not be discussed.) It is a benign and reasonable rule to the end that justice may be done.

Where, in the trial court there has not been a full development of a controlling point, the appellate court should remand

the case for such development to be made, if, from the record, it reasonably appears that the essential evidence exists.

These principles are in no wise affected by the fact that the trial court overruled defendant's demurrer to the evidence and entered for the plaintiff a judgment which cannot be upheld on the evidence as submitted.

Hatcher, Judge, dissenting:

The majority decision is based on *Laas* v. *Lubic,* 101 W. Va. 546, *Cook* v. *Lbr. Co.,* 74 W. Va. 503, and *Ins. Co.* v. *Wilson,* 29 W. Va. 528, without any attempt to discover and apply the reasons which impelled those decisions. *Laas* v. *Lubic,* merely refers to and depends on *Cook* v. *Lbr. Co.,* and *Ins. Co* v. *Wilson. Cook* v. *Lbr. Co.* involved the title to timber land and was tried by the circuit court in lieu of a jury upon evidence offered by both parties. It was upon a patent introduced by defendant (issued prior to the patent under which plaintiff claimed), that the weakness of plaintiff's title was made apparent. Consequently the declaration by this court in the second point of the syllabus that the submission of the case to the trial court for its findings on questions of fact, made the parties demurrent to the evidence and demurree, respectively, is not well taken. It is unheard-of practice that the defendant, merely by agreeing to submit the facts to the court instead of a jury, thereby waives all of his evidence in conflict with that of plaintiff, etc., which he would do as a demurrant to the evidence. Because of this misconception of the position of the parties it is not surprising that the court then misapplied the law and remanded the case merely to see, as the opinion states, *if the plaintiff could prove the omitted fact* (his title) *or desired to do so.* That statement clearly shows there was nothing in the record from which the court judicially knew the plaintiff could furnish such proof. How different was the situation in *Ins. Co.* v. *Wilson.* There the plaintiff moved the trial court for permission to withdraw his joinder to defendant's demurrer before the demurrer had been passed on. The plaintiff further showed by affidavit that he had been led by the representations and conduct of the defendant, prior to the trial, not to put in his whole case and that he was then in position

to fully supplement his evidence, etc. This court very properly held that plaintiff's motion was made at a time when the trial court had control of the entire proceedings; that the trial court was shown that the plaintiff had available, material evidence which he had been trapped by defendant into omitting, and that accordingly the joinder in the demurrer should have been set aside and the case reopened. The opinion (p. 542) says: "The circumstances of this case bring it precisely within the rules acted upon in *Gibson* v. *Hunter*, H. Blk. 207, and *Taliaferro* v. *Gatewood*, 6 Munf. 320."

*Gibson* v. *Hunter*, decided in 1793 and reported in 2 H. Bl. 187 (instead of the reference above given), declared, on page 208, "the whole proceeding upon a demurrer to evidence to be under the control of the judge before whom the trial is had." *Taliaferro* v. *Gatewood*, decided in 1819, after repeating the above declaration in *Gibson* v. *Hunter*, continued: "If, therefore, by mistake or otherwise a material fact, on which the point in issue depends, and which the court judicially knows to exists, be omitted in such demurrer, it ought to be set aside as too uncertain for a judgment to be given thereon." So, if in the West Virginia decisions which cite and purport to rely on the rule of *Gibson* v. *Hunter* and *Taliaferro* v. *Gatewood*, the court *judicially knew to exist the omitted facts*, then such decisions were properly within the rule—otherwise they were not. Judicial knowledge of the omitted fact is the heart of the rule. This is clearly shown by the opinion in *Taliaferro* v. *Gatewood*, p. 323. The evidence omitted in that case was the writ in another action. The opinion specifies: "The case before us being of a record, in which, it is judicially known to the court that a writ existed and preceded the filing of the bill, our decision will have no effect as to cases in which ulterior evidence may or may not exist, and in which it is not certainly known to the court that it does exist. In such cases, the party must abide by the testimony he has exhibited." In the instant case "it is not certainly known to the court" that proof of loss was filed. Ulterior evidence of that fact "may or may not exist." Therefore, under the precise exclusion of *Taliaferro* v. *Gate-*

*wood,* the plaintiff should "abide by the testimony he has exhibited." To decide otherwise is to repudiate *Taliaferro* v. *Gatewood* and to depart from the common law precedure relating to a demurrer to the evidence—a procedure the constitution of West Virginia has continued until it may be changed, not by the judiciary, but by the legislature. See Constitution, Article VIII, sec. 21.

If the joinder in a demurrer to the evidence is to be regarded as purely experimental on the part of the demurree, then fair play demands that the demurrer itself be treated as experimental on the part of the demurrant and that he be permitted to present his evidence whenever the demurrer is overruled. In such event, alas, the common law procedure on a demurrer to the evidence would be no more.

Lively, Judge. (concurring in Judge Hatcher's dissent):

I am adverse to striking down and rendering ineffective a demurrer to evidence preserved by the Constitution. I can see no practical use of a demurrer and joinder therein, if the court is permitted to refuse to pass on the demurrer, on the ground that posibly plaintiff may strengthen his hand. It would enable plaintiff to try his case by piecemeal at the expense of defendant; and if the court below sustained the demurrer, plaintiff could then appeal and reverse the judgment at defendant's expense. In such a state of the law there would be little practical use in demurrers to your adversary's evidence. There would be little finality in so doing. It may be that a court, in the interest of justice, where plaintiff's counsel has failed through inadvertence, mistake or misconception to produce evidence clearly at hand which would make a *prima facie* case of recovery, should refuse to permit him to join in the demurrer. That would be in a case where the court *judicially knows* that such omitted evidence in fact exists, as pointed out in Judge Hatcher's dissent, and in Judge Maxwell's note of concurrence to the majority opinion. What is there in the instant case by which the lower court or this court judicially knows that Campbell made claim in writing within the prescribed time?

The case of *Laas* v. *Lubic,* on which the decision is predicated, illustrates the result of directing a new trial where

plaintiff has not made a prima facie showing by his evidence, to which a demurrer has been sustained. I protested against that decision, but did not dissent because other judges, more learned and able than myself, seemed to concur. I am not quick to dissent. The issue in that case was the place from which the stone fell which killed plaintiff's decedent. Plaintiff's evidence was not sufficient, and it was pointed out in the opinion that a witness who first discovered the body was not summond, and it was said in the opinion "all the evidence obtainable does not appear to be before the court." The judgment was reversed and the case remanded "to afford the plaintiff an opportunity to supply evidence necessary to sustain his case, if he can do so.' A fishing expedition for evidence was inaugurated. It caught no fish. His omitted evidence made it clear that he had no case. See *Laas* v. *Lubic*, (second appeal) 105 W. Va. 513. 144 S. E. 225. Defendant was put to the costs of a new trial, and the costs of an appeal, because of this judicial fishing venture.